SAVOY, Judge.
This case, and the companion case of Reed et ux. v. Houston Fire and Casualty *584 Insurance Company et al., reported at 192 So.2d 588, arose out of an accident which occurred March 7, 1963, involving three automobiles, on U. S. Highway 167 about .8 of a mile south of Carenero, in Lafayette Parish, Louisiana. The plaintiff, Mrs. Lucy H. David, was riding as a guest passenger in a 1960 Ford Falcon being driven by Mrs. Juanita W. Reed. The two suits were filed by these two ladies joined by their husbands for the community claims, for personal injuries and damages arising out of the accident. Named as defendants in both suits are the owner, operator and liability insurer of a 1960 Ford Fordor automobile, Lafayette Milling Co., Inc., Louis A. Domingue and Houston Fire and Casualty Insurance Company, and the driver and alleged liability insurer of a 1956 Ford automobile, Anna T. Chargois and Great American Insurance Company.
A motion for summary judgment was filed in both suits by Great American Insurance Company, wherein it admitted that a policy of insurance had been issued to and in favor of Francis H. Pellerin covering the 1956 Ford automobile, but it denied that the policy afforded any coverage in connection with the operation of the vehicle by Anna T. Chargois at the time of the accident. It is alleged that Francis PI. Pellerin had died prior to the time of the accident, that his estate had not been opened, that his prior marriage to Anna T. Chargois had ended in divorce on June 12, 1952, that Mrs. Chargois had since married and divorced Albert B. Chargois, and that accordingly, Mrs. Chargois did not constitute an insured under the policy.
The district court granted the motion for summary judgment in both cases, and dismissed the plaintiffs’ claims as against Great American Insurance Company. An application for a new trial was denied, and the plaintiffs have appealed to this Court.
There is no conflict as to the facts. Francis H. Pellerin and Anna C. Theriot were married on July 23, 1919, and were divorced on Juñe 12, 1952. There were three children born of this marriage who were majors at the time of this accident. Anna C. Theriot then married Albert E. Chargois on June 14, 1952, and was divorced from him on January 25, 1956. After this divorce, Mrs. Chargois, (Anna C. Theriot), moved into the home of Francis H. Pellerin for the purpose of caring for him and actually cared for him until the time of his death. They did not remarry. It was stipulated that Mrs. Chargois and two of Mr. Peilerin’s children would testify that Mr. Pellerin agreed to leave Mrs. Chargois the 1956 Ford automobile and the home in which they were living if she would care for Mr. Pellerin to the time of his death. Prior to Mr. Peilerin’s death, Mrs. Chargois had the permission of Mr. Pellerin to use the insured automobile in connection with her duties and otherwise, and, in fact, had the possession and control of the automobile. The policy of insurance was issued on September 28, 1962, covering the 1956 Ford automobile owned by Francis H. Pellerin, and lists Francis H. Pellerin as the named insured. Mr. Pellerin died on January 17, 1963. After his death, Mrs. Chargois continued to live in the home and to drive the automobile. Following his death, the children consented to the use of the automobile by Mrs. Char-gois. There was no notice given to the insurance company as to any arrangement between the parties, and the company had no knowledge of these factors. The accident occurred on March 7, 1963, some 48 days after the death of Mr. Pellerin. On April 22, 1963, a special endorsement was issued on the policy changing the named insured from Francis H. Pellerin to Anna T. Chargois. On the following day, April 23, 1963, another endorsement was made to the policy adding collision, comprehensive and medical payments insurance to the policy, with the insurance issued to Anna T. Char-gois. On May 9, 1963, there was an assignment of interest in the insurance policy from Anna T. Chargois to Mildred P. Broussard, indicating that the- vehicle had been transferred to Mrs. Broussard.
*585 Francis H. Pellerin left a will dated April 13, 1962, but no proceedings were taken to open his estate until after his death on January 17, 1963, until January 7, 1966, when Mrs. Chargois was appointed ad-ministratrix of his succession. In his will the decedent left Mrs. Chargois the usufruct during her natural life of his home and all the contents therein. She was not given the 1956 Ford automobile, nor was she appointed testatrix in the will. Subject to the bequest to Mrs. Chargois, all of his property was left to their three children.
Plaintiffs maintain that Mrs. Chargois was an insured under and was covered by the insurance policy at the time of the accident, for the following reasons: that she had full possession and control of the insured automobile from the inception of the policy with the consent and permission of the insured until his death, and thereafter, with the permission and consent of the heirs of the insured; that Mrs. Chargois was a member of the insured’s household from the inception of the policy through the time of the accident; that Mrs. Chargois was a person legally responsible for the use of the insured’s automobile, as it had been entrusted to her by the insured and she was the only person who drove the automobile; that after the death of the insured, Mrs. Chargois was a person having proper temporary custody of the insured’s automobile until the application and qualification of a legal representative and until the automobile was transferred to her and the policy was put in her name on April 22, 1963.
The defendant maintains that since Mr. Pellerin died prior to the accident, any permission or consent granted by him would have terminated, and there would likewise be no “household” after his death under the provisions of the policy. It is maintained that no coverage would be afforded to Mrs. Chargois unless she fell within the provisions of Paragraph 15 of the “Conditions” listed in the policy, which reads as follows:
“15. Assignment. Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the insured named in item 1 of the declaration, or his spouse if a resident of the same household, shall die, this policy shall cover (1) the survivor as named insured, (2) his legal representative as named insured but only while acting within the scope of his duties as such, (3) any person having proper temporary custody of an owned automobile as an insured, until the appointment and qualification of such legal representative, and (4) under division 1 of Part 11 any person who was a relative at the time of such death.”
Defendant maintains that Mrs. Chargois did not fall within any of these provisions at the time of the accident, as under 15(1) she was not the spouse of the named insured, and under 15(2) she was not his legal representative acting in the scope of her duties as such. It is maintained that 15(3) refers to temporary custody of an owned automobile and relates to the person who is in charge of maintaining the automobile. for the deceased or the estate until the appointment and qualification of a legal representative. It is maintained that since the heirs exercised their rights of ownership pursuant to their inheritance from the. deceased and granted permission to Mrs. Chargois to use the automobile, which was sold a few months later without the appointment of a legal representative, that there was no such temporary custody as provided in 15(3). The appointment of a legal representative in 1966, some three years after his death and after the motion for summary judgment had been granted by the district court, would have no application under these facts. 15(4) was not applicable since it pertains to the medical payments provision, rather than the liability provision, of the policy.
The district court agreed with the defendant that Mrs. Chargois would not be covered by the insurance policy unless she came within the provisions of Paragraph 15 of the conditions of the policy. It found that 15(1) did not apply since Mrs. Char-gois, although a resident of the same house *586 hold, was not the spouse of Mr. Pellerin, nor a survivor, since she was neither an heir or a legatee. This ruling was made before the will was located. The court found that she was not his legal representative at the time of the accident, so 15(2) did not apply. The court considered that Provision 15(3) provided for a situation where the appointment of a legal representative contemplated since that provisions made reference to “such representative”, referring to Section 15(2). Since there was never any action taken for the appointment or qualification of a legal representative prior to the time of the hearing on the motion for summary judgment on April 12, 1965, the court determined that 15(3) did not apply. Neither party contended that 15(4) was applicable. Accordingly, the court concluded that Mrs. Chargois was not covered by the policy issued by Great American Insurance Company.
After carefully considering the facts of this case in light of the jurisprudence of this State, this Court concludes that the district court placed too narrow an interpretation on the provisions of the insurance policy. The following general principles of law are applicable to our decision, to-wit:
Parks v. Hall, 189 La. 849, 181 So. 191:
“ * * * The language employed in the policy is to be construed so as to effectuate the insurance and not for the purpose of defeating it; * * *.
“ ‘The omnibus coverage clause gives additional assureds, other than the person-named in the .liability policy as assured, with certain specified limitations, the benefit of the policy. * * * It extends protection to one "permitted” to use the car, although the "assured” may not ■ be liable for the accident under the doctrine respondeat superior. The object of such clause is to cover the liability of the operator of the car as unnamed assured, and to protect any person so injured by giving him a cause of action against the insurer for injuries deemed by law to have been caused by the operation of the car * *
Casano v. Cook (La.App., 4 Cir., 1963), 157 So.2d 616:
“The cases are legion that an insurance policy, like any other contract, is subject to the general rules of the Civil Code for interpretation of agreements. The purpose is to effectuate the contract if possible. The language used in a policy should be construed so as to effectuate and not defeat that language. * * (Citing cases and Civil Code Articles 1950 and 1951.)
Ellis Electric Co. v. Allstate Insurance Co. (La.App., 1 Cir., 1963), 153 So.2d 905:
“ * * * The policy is a family automobile policy and the purpose of such policies is to cover virtually every risk contingency which might reasonably occur in a family’s use of automobiles. See 21 La.Law Review 836. Also, it is well settled law in the interpretation of contracts of insurance, all ambiguities must be construed in favor of the insured and against the insurer. Jones v. Standard Life and Accident Insurance Company, La.App., 115 So.2d 630.”
LSA-Civil Code Article 1950:
“When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms.”
LSA-Civil Code Article 1951:
“When a clause is susceptible of two interpretations, it must be understood in that in which it may have some effect, rather than in a sense which would render it nugatory.”
Under the provisions of earlier forms of policies, it has been held that the death of the named insured automatically terminates any permission which he may have given during his lifetime for the operation of the automobile by third persons under the *587 omnibus clause. It was also held that the deceased did not have a “household” following his death, so as to permit adult members of such a household to delegate permission to themselves to use the automobile. However, such a result would no longer follow, as a matter of course, under the more modern forms of policies which extend coverage to any person having temporary custody of the automobile. Under the newer provision, as found in the policy in this case, coverage continues after the death of the named insured. See Section 4359, including footnotes, of Appleman, Insurance Law and Practice.
The policy issued by Great American Insurance Company provided under “Part 1 — Liability”, as follows:
“Persons Insured. The following are insured under Part 1:
“(a) With respect to the owned automobile,
“(1) the named insured and any resident of the same household.
“(2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured ; * * * ”
Prior to Mr. Pellerin’s death, Mrs. Chargois was covered by both of these provisions. She was given the permission to use the automobile by the named insured, and she was also a resident of the same household. Since Mrs. Chargois was an insured as a resident of the same household prior to Mr. Pellerin’s death, and since the policy continues after the death of Mr. Pellerin in accordance with its terms, we find under the facts of this case that she would be covered by the provisions of paragraph 15 (3) of the “Conditions”, as being a person having proper temporary custody until the appointment and qualification of the legal representative. We believe that the provision in Part 1, “Persons Insured” (a) (1) should be construed in connection with paragraph 15(3) of the “Conditions” so as to provide coverage to Mrs. Chargois as an insured. She would not be a named insured, but only an insured, and would ba covered only while driving the 1956 Ford automobile, the owned automobile, under the provisions of the policy.
A determination of what is “proper temporary custody” under the provisions of 15(3) must be made in the light of the facts of each particular case. However, rather than interpreting provision 15(3) narrowly so as to provide coverage in a limited sense and only in the case of a contemplated succession proceeding, this policy provision should be interpreted as a catchall coverage to continue tire policy in effect after the death of the insured to anyone having proper temporary custody in a broad sense. The word “proper” would indicate that the use was not illegal, and the word “temporary” should be construed so as to mean use until such time as there was an appointment and qualification of a legal representative. The provision does not set a time limit within which this appointment must be made or even contemplated. In other jurisdictions, other insurance policies set a particular number of days such as thirty or sixty days within which notice must be given for the policy to continue in effect under this provision. The policy in question provided no specific period limiting this provision and did not require notice within a certain time.
For the purpose of our holding, we find that the technical holding under the older forms of insurance policies, that the household of the decedent terminated at his death, should not be followed under the provisions of the policy in question in this case.
For the reasons assigned, the judgment of the district court is reversed, and the motion for summary judgment is overruled, and the case is remanded to the district court for further proceedings consistent with the views expressed herein. The assessment of all costs in the district court *588 and on appeal is to be deferred until the final determination of this litigation.
Reversed and remanded.