HOOD, Judge.
Mr. and Mrs. Joseph R. David instituted this suit for damages for personal injuries sustained by Mrs. David in a motor vehicle collision. The defendants originally named in the suit are Louis A. Domingue, Lafayette Milling Co., Inc., Houston Fire & Casualty Insurance Company, Mrs. Anna T. Chargois and Great American Insurance Company. A compromise settlement was entered into between plaintiffs and the first three named defendants while the suit was pending, and the suit was dismissed as to Domingue, Lafayette Milling Company and Houston Fire & Casualty Company.
The case then went to trial on the demands of plaintiffs against the remaining defendants, Mrs. Chargois and Great American Insurance Company. Following that trial judgment was rendered by the trial court rejecting plaintiffs’ demands against those defendants. Plaintiffs have appealed.
This suit was consolidated for trial with another suit which was instituted by Mr. and Mrs. Eric Joseph Reed against the same defendants, and which arose out of the same accident. We are deciding both of these companion cases on this date. See Reed, et ux. v. Great American Insurance Company, et al., 242 So.2d 6.
The accident which resulted in injuries to Mrs. David occurred about 5:00 p. m. on March 7, 1963, on U. S. Highway 167, approximately .8 of a mile south of Caren-ero, in Lafayette Parish. One of the automobiles involved in the collision was owned by Mr. and Mrs. Eric Joseph Reed, and it was being driven by Mrs. Reed when the accident occurred. The other automobile was owned by the Estate of Francis H. Pellerin, deceased, and was being driven by defendant, Mrs. Chargois. Great American Insurance Company was the liability insurer of the Pellerin car, and thus it was the insurer of Mrs. Chargois, the driver, at the time of this accident. See David v. Houston Fire and Casualty Insurance Co., 192 So.2d 583 (La.App. 3 Cir. 1966).
Mrs. David, one of the plaintiffs in this suit, was riding as a passenger on the front seat of the Reed vehicle, and she sustained injuries as the result of the collision. She contends that Mrs. Chargois was negligent, and that her negligence was a proximate cause of the accident.
The trial judge concluded that Mrs. Char-gois was free from negligence, and that plaintiffs are not entitled to recover from her or from her insurer. The principal issue presented on this appeal is whether the trial court erred in holding that Mrs. Chargois was not negligent.
The evidence shows that just before the vehicles collided, Mrs. Reed was driving her car north on U. S. Highway 167. As she approached the intersection of that *3 highway with the Gloria Switch Road, an automobile being driven west on Gloria Switch Road by Louis A. Domingue suddenly entered the intersection ahead of her and proceeded to turn to its left, or south, on Highway 167. After traveling several feet south on that highway, Domingue then turned his car to his right, or west, and drove it into a parking area in front of Landry’s Bar on the west side of the highway, and he stopped in that parking area directly in front of the bar.
The automobile which Domingue was driving was owned by his employer, Lafayette Milling Co., Inc., and it was insured by Houston Fire & Casualty Insurance Company.
At the time Domingue entered the intersection, Mrs. Chargois was driving the Pel-lerin car south on Highway 167, approaching this crossing from the north. When Mrs. Chargois first saw Domingue in the intersection, she caused the car she was driving to veer to its right, or to the west, onto a shelled parking area in front of a lumberyard located northwest of the intersection. She drove some distance south on this shelled parking area, and then caused her car to turn back to her left onto the highway, re-entering the concrete portion of the highway at about the northwest corner of its intersection with the Gloria Switch Road. She traveled south across this intersection, and then began to veer her car to her left, proceeding in a southeasterly direction, across the center line of the highway and into the northbound traffic lane of Highway 167, to the point where her car collided with the Reed automobile.
The collision occurred in the northbound lane of Highway 167, about three feet from the east edge of the highway, at a point 87 feet south of its intersection with the Gloria Switch Road.
Mrs. Reed saw the Domingue car as it entered the intersection ahead of her, and she observed the Chargois car as it traveled a distance on the shelled parking area northwest of the crossing. She saw the Chargois vehicle as it veered back on the highway and crossed over into the northbound lane of traffic. Upon making these observations, Mrs. Reed immediately pulled her car to her right, partially on the east shoulder of the highway, and she brought it to a stop with the two right wheels of her car on the east shoulder of the road. The front of her car was 87 feet south of the crossing when it stopped, and the Reed car remained in that parked position until the collision occurred a few moments later.
The Domingue car was traveling at a speed of about IS miles per hour as it entered the intersection, and it continued to travel at that speed as it proceeded south on Highway 167 and then turned west into a parking area west of the highway. The accident occurred at a point directly east of, and across Highway 167 from, the place where Domingue parked his car. The investigating officer determined that the collision occurred 87 feet south of the intersection, so it is apparent that Domingue also was parked that distance south of the Gloria Switch Road. It is argued, and we agree, that Domingue drove a distance of at least 100 feet between the time he entered the intersection and the time he parked his car in front of Landry’s Bar. The evidence indicates that his car had traveled that entire distance and had been brought to a stop before the collision occurred.
Mrs. Chargois, by her own testimony, was traveling at a speed of 35 miles per hour as she approached this intersection. She testified that she did not see Domin-gue until he was already in the intersection, and about two car lengths ahead of her. She stated that she applied her brakes when she saw Domingue, and then does not remember anything that happened thereafter until the collision occurred. Her testimony, in part, was “Well, now I cannot swear to anything. I know I applied my brakes and when I noticed, the collision was there.” And, “I did not see anything. I don’t recall — the impact and that’s all.”
*4 Mrs. Reed was driving at a speed of about 35 or 40 miles per hour as she approached the intersection. She was about 200 or 225 feet from Domingue when he started to cross Highway 167. She began slowing up when she saw Mrs. Char-gois veer off to the west side of the highway, and she brought her car to a stop when she observed the Chargois automobile cross the center line and enter Mrs. Reed’s lane of traffic. As already noted, the Reed car was parked 87 feet south of the intersection, and partially on the east shoulder of the highway, when it was struck.
Some of the witnesses differed in their estimates as to how far Mrs. Chargois was from the intersection when she first saw Domingue and then veered off onto the west side of the highway. Mrs. Chargois’ own estimate of two car lengths obviously is incorrect, since the other evidence establishes that she traveled some distance on the shelled parking area and then back on the highway before she reached the crossing. Mrs. Reed and Mrs. David estimated that she drove a distance of 150 to 160 feet on the shelled area before reaching the intersection, and a motorist following Mrs. Chargois testified that she traveled from three to five car lengths on the shelled parking area before she returned to the highway. The Gloria Switch Road was estimated to be “less than fifty feet” wide at this intersection.
All parties to this particular action contend, and we agree, that Domingue was negligent, and that his negligence was a proximate cause of the accident. They disagree, of course, as to whether Mrs. Chargois also was negligent.
Considering the speed at which Mrs. Chargois was driving, and the distance her car traveled after she saw Dom-ingue in the intersection, we find that she could have brought her' car to a stop long before she reached the parked Reed car if she had exercised reasonable care in attempting to do so. She also could have avoided the accident by remaining in her lane of traffic or somewhere near the center of the highway.
Defendants contend that Mrs. Chargois was faced with a sudden emergency when Domingue entered the intersection, that she exercised reasonable care under the circumstances, and that she thus was free from negligence. . The trial judge agreed. He held that Mrs. Chargois acted quickly when the danger arose, and that “even if she failed to choose the best possible course of action which might have prevented the collision, she cannot be held responsible for the damages claimed because the collision was caused by the fault of Domingue.”
A motorist faced with a sudden emergency not of his own creation is not held to the same degree of care as is required of a motorist under normal circumstances. Faced with a sudden emergency not of his own making, a motorist is required only to react as an ordinary reasonably prudent individual would react. He is not charged with negligence because he fails to elect the best possible means available to avoid an accident. If he takes reasonably prudent evasive measures under the attending circumstances he has discharged the burden of care incumbent upon him. Stanford v. Bateman Frozen Foods Co., 149 So.2d 753 (La.App. 1 Cir. 1963); Commercial Standard Insurance Co. v. Johnson, 228 La. 273, 82 So.2d 8 (1955) ; Dane v. Canal Insurance Co., 240 La. 1038, 126 So.2d 355 (1961).
Although a motorist faced with a sudden emergency is not held to the same degree of care as is required of a driver who has ample opportunity for the full exercise of judgment and reason, the motorist faced with such an emergency nevertheless is under a duty to exercise some degree of care. He is required to react as an ordinary reasonably prudent person would react and to take reasonably prudent evasive measures under the circumstances.
In the instant suit the action of Mrs. Chargois in veering to her right, into *5 the parking area west of the highway, may be excused and regarded as not constituting negligence on her part because of the sudden emergency which confronted her. After returning to the highway, however, Mrs. Chargois allowed her car to gradually cross the center line of that thoroughfare, and to go into the northbound lane of traffic where it collided with the Reed car. We are unable to agree with the trial judge that Mrs. Chargois reacted as an ordinary reasonably prudent person would react under the circumstances. She was traveling at a relatively slow rate of speed, and if she had exercised reasonably prudent care under the circumstances we think she would have remained in her proper lane of traffic after returning to the highway, or she would have brought her car to a stop in ample time to have avoided a collision.
Our conclusion is that Mrs. Chargois was negligent, that her negligence was a proximate cause of the accident, and that she and her insurer are liable to plaintiffs.
As a result of the accident, Mrs. David sustained the following injuries: (1) A deep laceration on the right side of her face, leaving a permanent disfiguring scar about nine inches long, extending from the right eyebrow, down the right cheek and continuing to a point below the jaw; (2) a fractured maxilla (facial bone); (3) fractures of four teeth and permanent injuries to four other teeth; (4) a fracture of the right wrist; and (5) multiple lacerations of her right leg and knee.
Glass fragments became embedded in Mrs. David’s eye and her face as a result of the accident. The treatment of these injuries required two periods of hospitalization and two surgical procedures. A piece of glass is still in the tissues of her face, and it will have to be removed by surgery. Plastic surgery has been recommended to remove some of the scar tissue from her face, and to enable her to fully close her right eye. It was necessary for her to wear her arm in a cast for about six weeks because of the wrist fracture. She was attending a beauty school when the accident occurred, and was delayed for about six months in completing the course she was taking because of these injuries. The nerves in about five of her teeth were damaged in the' accident, and the treating dentist testified that these teeth may have to be extracted soon.
Considering all of these injuries, and particularly the facial scar, we think an award of $30,000.00 to Mrs. David as general damages would be fair and adequate.
The medical bills incurred for the treatment of these injuries have amounted to $1,529.11. The estimated cost of the plastic surgery which has been recommended, including hospitalization, is $2,850.00. The dental work which is or will be required will cost about $400.00. And, Mrs. David lost $25.00 worth of clothing and personal belongings as a result of the accident. The total damages sustained by Mr. David, therefore, amount to the sum of $4,804.11.
The evidence fails to establish that Mrs. David lost any wages, or incurred any other expenses for which she is entitled to be compensated, as a result of this accident. Plaintiffs’ demands for these additional amounts thus will be rejected.
As we have already observed, there were two tortfeasors here, Domingue and Mrs. Chargois. These tortfeasors were liable, in solido, to plaintiffs for the damages which the latter sustained. Plaintiffs have entered into a compromise settlement with one of them, Domingue, and for that reason they are entitled to recover from the remaining tortfeasor, Mrs. Chargois (and her insurer), only one-half the damages they sustained. See Harvey v. Travelers Insurance Company, 163 So.2d 915 (La.App. 3 Cir. 1964).
The insurance policy which was issued by Great American to Pellerin, covering the automobile being driven by Mrs. Char-gois, provided for liability insurance with a limit of $5,000.00 for each person, and $10,000.00 for each occurrence. Great *6 American’s liability in the instant suit thus is limited to $5,000.00, plus costs and interest as provided in the policy.
At the time of the filing of this suit, a dispute arose between Mrs. Chargois and Great American as to whether the policy issued by the latter to Pellerin covered Mrs. Chargois. Great American refused to provide Mrs. Chargois with legal services for her defense of the case, and she thereupon engaged an attorney to represent her. She filed a third party petition here seeking to recover the legal expenses she incurred in providing her own defense. The trial judge awarded her the sum of $1,000.00 as attorney’s fees. No issue is raised here as to that award and we thus affirm it.
For the reasons herein set out, the judgment appealed from is reversed insofar as it rejects plaintiffs’ demands against defendants for damages, and judgment is hereby rendered as follows: (1) In favor of plaintiff, Mrs. Lucy H. David, and against Mrs. Anna T. Chargois and Great American Insurance Company, in solido, for the sum of $15^000.00, with legal interest thereon from date of judicial demand until paid; (2) In favor of plaintiff, Joseph R. David, and against Mrs. Anna T. Chargois and Great American Insurance Company, in solido, for the sum of $2,402.-06, with legal interest thereon from the date of judicial demand until paid; and (3) Decreeing that the total liability of Great American Insurance Company for the damages awarded above will not and cannot exceed the policy limits of $5,000.00 plus all costs and all interest on the entire amount of the judgments rendered herein which has accrued or will accrue after entry of said judgments.
That portion of the judgment appealed from which condemns Great American Insurance Company to pay the sum of $1,000.-00, with interest, to Mrs. Anna T. Char-gois for attorney's fees, is affirmed.
All costs of this suit, including those incurred in the trial court and on appeal, are assessed to defendants, Mrs. Anna T. Chargois and Great American Insurance Company.
Affirmed in part, and reversed in part.