422 So.2d 1344 (1982)
Mrs. Anne Ochsner LOVELL, Individually and as the Natural Tutrix of her Minor Children
v.
EARL GRISSMER COMPANY, INC., Cotter & Co., Southdowns Hardware & Paint Company and United States Fidelity & Guaranty Company.
No. 82 CA 0006.
Court of Appeal of Louisiana, First Circuit.
November 16, 1982.
*1346 Michael Patterson, Baton Rouge, for plaintiff-appellant Mrs. Anne Ochsner Lovell, Individually and as Natural Tutrix of her minor children.
Stephen R. Wilson, Joseph F. Keogh, Baton Rouge, for defendants-appellees Britt-Tech Corp., Home Ins. Co. and Fireman's Fund Ins. Co.
John A. Bivins, Lafayette, for defendants-appellants Earl Grissmer Co., Cotter & Co., American Mut. Ins. Co. and Pluto Corp.
William N. Faller, Baton Rouge, for defendant-appellee Commercial Union Ins. Co.
Richard D. Chappuis, Jr., Lafayette, for third party in the main demand defendant-appellee (third party plaintiff herein) Harbor Ins. Co.
Roy A. Mongrue, Jr., Paul H. Spaht, Baton Rouge, for defendant-appellee Continental Cas. Co.
Before LOTTINGER, COLE and CARTER, JJ.
LOTTINGER, Judge.
This is a wrongful death action in products liability resulting from the electrocution death of Lawrence L. Lovell, Jr. His surviving spouse, Anne Ochsner Lovell, individually and on behalf of her minor children, Lawrence L. Lovell, III and Keith Ochsner Lovell, filed suit against the manufacturers, distributors, and lessor of an electrically-powered, high-pressure water sprayer known as the "Blue Lustre Dirt Buster" (hereinafter "Dirt Buster.")[1] Mr. *1347 Lovell died from an electrical shock received while using the Dirt Buster to clean the outside walls of his Baton Rouge residence. After a jury trial, judgment was rendered in favor of the only remaining defendants, Britt-Tech Corporation (the manufacturer of the machine) and its insurers. Plaintiff has appealed devolutively.[2]

FACTS
The accident causing Mr. Lovell's death occurred on October 1, 1977. Mr. Lovell had rented the Dirt Buster to clean discolorations on the bricks of his home caused by an overgrowth of vines. In using the machine, Mr. Lovell attached an extension cord, which he ran through a window in the den in the front of the house. This extension cord was plugged into a three-pronged receptacle in the den and connected outside the house to the twelve-foot power service cord of the machine. Mr. Lovell removed his shoes and socks and began spraying the walls, causing many large puddles of water to accumulate. Unbeknownst to Mr. Lovell, the three-pronged electric receptacle in the den was not grounded, since the ground wire was not connected at the receptacle. At about 10:45 a.m., while spraying the walls, Mr. Lovell received an electric shock which caused cardiac arrest. The coroner for East Baton Rouge Parish could not testify definitively that the electric shock had come directly from the Dirt Buster; however, Mr. Lovell's left foot and leg were in contact with the machine when he was electrocuted.
The Dirt Buster contained a label which in part stated the following:
"SAFETY PRECAUTION".
"To prevent possible personal injury, do not direct spray from the wand toward any part of the body. Use only cleaning chemicals approved by the manufacturer for use in this machine. NEVER USE FLAMMABLE SOLUTIONS. If using an extension cord, make sure connection between washer cord to extension cord is waterproof. (See your dealer for proper extension cord.) Always use an extension cord and receptacle that is grounded."

TRIAL COURT
Plaintiff alleged negligence in the design and manufacture of the Dirt Buster, and also alleged the defendants' strict liability, i.e., that the machine contained a defect which occasioned an unreasonable risk of harm. The defendants pled the affirmative defenses of contributory negligence and assumption of the risk.[3]
After a lengthy trial, the jury answered special interrogatories as follows:

NEGLIGENCE

*1348 1. Was the injury which the plaintiff suffered in fact caused by the conduct of the defendant, Britt-Tech Corporation?
 Yes___ No X 
2. Was the conduct of the defendant Britt Tech Corporation below the standard applicable to its conduct?
 Yes___ No X 
3. Was the injury which the plaintiffs suffered in fact caused by the conduct of Southdowns Hardware, either independently or in conjunction with the named defendant?
 Yes___ No X 
4. Did the plaintiffs suffer actual damage?
 Yes X No___
5. Was Lawrence Lowrey Lovell, Jr. contributorily negligent?
 Yes X No___
6. Did Lawrence Lowrey Lovell, Jr. assume the risk of the injury suffered?
 Yes X No___

STRICT LIABILITY
1. Was the Blue Lustre Dirt Buster manufactured by Britt-Tech Corp. unreasonably dangerous in normal use at the time of its manufacture?
 Yes___ No X
2. Was the damage to plaintiffs, if any, actually caused by the Blue Lustre Dirt Buster?
 Yes___ No X
3. Did Lawrence Lowrey Lovell, Jr. assume the risk of the injury suffered?
 Yes X No___

DAMAGES
1. In the event that damages are due to Anne Oschner Lovell, in what amount do you find she is entitled?
 $ 0 
2. In the event that damages are due to Keith Oschner Lovell and Lawrence Lowrey Lovell, III, in what amount do you find they are entitled?
 $ 0 

SPECIFICATIONS OF ERROR
Plaintiff-appellant, Anne Ochsner Lovell, assigns the following specifications of error:

I.
The jury erred in finding the Blue Lustre Dirt Buster was not unreasonably dangerous in normal use.

II.
The jury erred in finding the damage to plaintiffs was not caused by the Blue Lustre Dirt Buster.

III.
The jury erred in finding that Lawrence Lovell, Jr. assumed the risk of his death.

IV.
The trial court erred, in a pretrial evidentiary ruling, by refusing to allow the introduction into evidence of proof of post-accident modifications to the Blue Lustre Dirt Buster.

SPECIFICATION OF ERROR 4
Plaintiff-appellant argues that the trial court erred in failing to admit evidence of post-accident modifications in the Dirt Buster. The modifications dealt with the length of the power service cord and the nature of the warning label. The evidence was presented in a stipulated proffer.
We are of the opinion that such evidence was properly excluded. See Givens v. De Soto Bldg. Co., 156 La. 377, 100 So. 534 (1924); Esta v. Dover Corporation, 385 So.2d 439 (La.App. 1st Cir.1980); writ den. 392 So.2d 690 (La.1980); Hadrick v. Diaz, 302 So.2d 345 (La.App. 1st Cir.1974). The rationale given formerly for this position was that as a matter of public policy, a defendant should not be punished for his attempt to repair or take precautions, and that same should be encouraged. Plaintiff maintains that this argument is no longer tenable, in that in today's business world, a manufacturer will not hesitate to make modifications and thereby prevent multiple future lawsuits, even though in so doing, he may lose one or two lawsuits pending by admitting his product was defective.
*1349 However, we are not convinced that subsequent repairs or modifications are necessarily probative that the prior product was defective. See Hadrick, supra. It is equally plausible that attempts to repair or modify represent a manufacturer's attempt to render totally innocuous a product which already occasions no unreasonable risk of harm. Additionally, such evidence is unduly prejudicial, especially in a trial by civil jury. Inasmuch as the prejudicial effect of this type of evidence outweighs greatly its probative value, we find that attempts to repair or modify subsequent to an occurrence have no legal relevance, and evidence of same were properly excluded by the trial judge.

SPECIFICATION OF ERROR 1
Plaintiff-appellant alleged both the negligence and strict liability of the manufacturer, Britt-Tech Corporation. However, the Louisiana Supreme Court in Kent v. Gulf States Utilities, Company, 418 So.2d 493 (La.1982), recently noted that strict liability merely relieves a plaintiff from having to prove the defendant's actual or constructive knowledge of the unreasonable risk of harm which his conduct or the thing in his custody occasions; otherwise, the determination of liability is the same. Under Rey v. Cuccia, 298 So.2d 840 (La. 1974); and Weber v. Fidelity & Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754 (1971), a manufacturer is presumed to know of the vices in his product, regardless of actual knowledge. Thus, under Weber, the plaintiff in a products liability suit must prove only that the product was defective, i.e., unreasonably dangerous to normal use; that the product was in normal use at the time the injury occurred; that the product's defect caused his injury; and that the injury might reasonably have been anticipated by the manufacturer. The primary focus is on the product itself and whether it is unreasonably dangerous to normal use. Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980); Weber, supra. In determining whether a risk of harm is unreasonable, the probability and magnitude of the risk are to be balanced against the utility of the thing. Hunt, supra.
The electrocution death of Mr. Lovell readily illustrates the severe magnitude of the risk involved. Also, the Dirt Buster was primarily a labor-saving device; thus, its utility value is relatively low. The most important factor in determining reasonability of the risk involved in using the Dirt Buster is that of probability.
Expert testimony at trial was uniformly to the effect that Mr. Lovell's death was produced by a combination of two factors: 1) Heavy exposure to water of the connection between the power service cord and the extension cord, and 2) an ungrounded electric receptacle. By allowing water to thoroughly penetrate the connection between the power cord and extension cord, electric current running from the receptacle to the machine found a path of conduction from the "hot" wire in the cords onto the ground wire. Because the electric receptacle used by Mr. Lovell was not grounded, the current which moved into the ground wire flowed into the metal frame of the Dirt Buster, which became energized, and undoubtedly was the means of Mr. Lovell's electrocution. Experts for both parties agreed that had either of the two above conditions been alleviated, the accident would not have occurred.
Plaintiff argues that by using a twelve-foot power cord, Britt-Tech made use of an extension cord almost mandatory, and plaintiff's experts testified that totally waterproofing the connection between the power cord and the extension cord was not possible for a consumer to accomplish. Inasmuch as all uses of the Dirt Buster entailed the presence of water and moisture, the plaintiff claims that the relatively short length of the power service cord was a defect in design. We disagree. Defense experts testified (and experts of plaintiff admitted on cross-examination) that regardless of the length of a power cord, it was foreseeable that a consumer would use an extension cord. Longer power cords tend to be subjected to more wear and tear during use, and the longer cords have a *1350 greater tendency to crack or buckle. The twelve-foot cord on the Dirt Buster was a direct carry-over from earlier models designed for industrial use, and due consideration was given to installing a longer cord. We find no defect in design, since a different length cord would not have significantly reduced the usage of extension cords.
Additionally, the use of an extension cord was not inherently dangerous. Only when the connection between the extension cord and the power cord was thoroughly wetted did a hazard exist, and then only if the power source was not grounded. Dr. Leonard Adams, professor of electrical engineering at L.S.U., tested the Dirt Buster and testified that he was unable to produce a charge in the machine even when spraying directly on the connection; only when the connection was allowed to lay in a puddle of water was the machine energized, in the absence of grounding. Dr. Adams' report, which he read into the record, stated that the probability of electric shock while using the Dirt Buster was extremely low, and he found the machine to be thoroughly safe in its normal usage.
Moreover, the safety warnings on the machine specifically instructed users to waterproof the connection between the power cord and extension cord if same was utilized, and to always use a grounded receptacle. Plaintiff argues that these warnings were inadequate and rendered the machine unreasonably dangerous. Plaintiff's experts testified that the connection could not be totally waterproofed. Jerry Hockmuth, a representative of Britt-Tech, testified that the word "waterproof," although technically inaccurate, was used to show the user the dire need to prevent water from reaching the connection. He testified this could be accomplished by taping the connection or elevating it to prevent its lying in a puddle. Plaintiff points out that the warning label says nothing about taping or elevating the connection, and is therefore inadequate.
We disagree. The duty of a manufacturer to warn extends to those dangers inherent in the product which are outside the knowledge of an ordinary user. Hebert v. Brazzel, 403 So.2d 1242 (La.1981). Manufacturers need not warn of dangers of improper usages which are obvious, or which should be known by the ordinary user. American Insurance Company v. Duo Fast Dixie, Inc., 367 So.2d 415 (La.App. 4th Cir.1979); Tri-State Insurance Company of Tulsa, Oklahoma v. Fidelity & Casualty Insurance Co. of N.Y., 364 So.2d 657 (La.App. 2nd Cir.1978); writ denied 365 So.2d 248 (La.1978). We find that it is common knowledge that electricity and water are dangerous in combination, and that water readily conducts electricity. We therefore agree with Dr. Adams' report which stated, "It would require a series of several violations of commonly known good practice in the use of household electricity to create a hazard with the Blue Lustre Equipment."
We find that the warning given on the Dirt Buster was sufficient to alert the user to the hazard involved in allowing moisture into the connection between cords. Taping or elevating the connection are remedies which are obvious even to a casual consumer, and the warning was not made inadequate by the exclusion of specific methods of preventing water from reaching the connection.
Plaintiff also argues that it was foreseeable that a consumer would plug the machine into the ungrounded receptacle, and presented expert testimony that the majority of household electric receptacles are not grounded. Thus, plaintiff argues, the use of a grounding system in the machine is a defect in design which might have been eliminated by using double insulation. However, representatives of the manufacturer testified that double insulation (in lieu of grounding) was attempted in designing the machine but was not accomplished successfully, and that a grounding system was both technically and economically the only feasible method of preventing shocks to the user.
Furthermore, the safety precaution on the machine stated explicitly that a *1351 grounded receptacle was necessary. This warning plaintiff alleges is inadequate, since it was foreseeable that a user would plug the machine into an ungrounded receptacle. While a manufacturer might warn more explicitly of the dangers of plugging the machine into a two-pronged ungrounded receptacle (and of using an adapter or tampering with the male end of the plug in so doing), the manufacturer (as well as the user) is justified in assuming that if the machine is plugged into a three-pronged receptacle, same will be grounded. Thus, while it is foreseeable (as a general proposition) that an ungrounded receptacle might be used, it is not foreseeable that such usage will be caused by an electrician's failure to connect the ground wire in the receptacle. It is impossible for a manufacturer to anticipate that what appears to be a grounded receptacle in the home of a consumer is in fact ungrounded because the receptacle ground wire is unattached, and we do not hold defendant to such a duty to anticipate and warn. Plaintiff argues that because a lay person does not know how to check a receptacle to make sure it is grounded, the warning is inadequate. We note only that the instructions apparently required by plaintiff would be impossibly long and overly technical, and thus would be impractical if not ignored altogether. Expert testimony at trial indicated that succinct warnings are the most effective, and we hold the warning on the machine as to grounded receptacles was sufficient under the circumstances.
When viewed with respect to common household knowledge of the dangerous properties of water and electricity, the warnings on the Dirt Buster were adequate to warn the user of the obvious hazard involved in improper usages of an extension cord and an ungrounded receptacle. Had the safety precautions been followed, the accident would in all probability not have occurred. The jury found that the Dirt Buster did not present an unreasonable risk of harm in its normal usage. We find no error by the jury in this regard. Although the accident which occurred was arguably within the realm of foreseeability, the likelihood of the occurrence was extremely low.

SPECIFICATION OF ERROR 2
Plaintiff-appellant argues that the jury committed manifest error in finding that Mr. Lovell's electrocution was not caused by the Dirt Buster. Plaintiff asserts that had Mr. Lovell not been using the machine, it is obvious that he would not have been electrocuted.
We are convinced, however, that the jury's finding merely indicates their perception of the distinction between cause-in-fact and legal cause. Although the electric shock received by the deceased was causally related to his use of the Dirt Buster, the jury finding reflects their opinion that the death of Mr. Lovell was not actually caused by any unreasonably dangerous condition of the machine; but rather the failure of the electrician to properly ground the receptacle. We agree.

SPECIFICATION OF ERROR 3
We have already decided that there is no liability on the part of the defendant, however, conceding for the sake of argument that the Dirt Buster created an unreasonable risk of injury to others and was the legal cause of Mr. Lovell's death, plaintiff still cannot recover because Mr. Lovell assumed the risk and/or was contributorily negligent.
The jury found that Mr. Lovell assumed the risk of injury and was contributorily negligent. Plaintiff argues that the jury was manifestly erroneous in its finding as to assumption of risk. She contends that the deceased did not voluntarily expose himself to a danger which he fully understood and appreciated, citing Dorry v. LaFleur, 399 So.2d 559 (La.1981).
Because of the demise of Mr. Lovell, it is impossible to determine whether he actually understood and fully appreciated the risk of electric shock. However, we note that in Dorry, supra, the Supreme Court distinguished between what a plaintiff should have known and what he must have known. Fact witnesses testified at trial that the *1352 connection between the power cord and the extension cord lay in an area of sidewalk where the volume of water resembled a puddle. Not far away, Mr. Lovell stood barefooted in a wet area. We are of the opinion that under these circumstances Mr. Lovell must have appreciated the risk which he was voluntarily undertaking, as a matter of common knowledge.
Even assuming arguendo that Mr. Lovell did not assume the risk, the question remains whether contributory negligence is a bar to plaintiff's recovery, since same was found by the jury. In Dorry, supra, the Supreme Court stated that contributory negligence can be a bar to strict liability under certain circumstances, provided that defendant's activity is not ultra-hazardous and no income is derived from defendant's conduct or the thing in his care which caused plaintiff damage. This would seem to exclude the instant case, since the manufacture of the Dirt Buster produced income to defendant Britt-Tech. However, we question the viability of the distinctions drawn in Dorry in light of the pronouncements made recently in Kent, supra, that strict liability merely frees the plaintiff from proving actual or constructive knowledge of the risk by the defendant. Inasmuch as a defendant's liability in strict liability cases is measured (in light of his presumed knowledge of the risk) in terms of traditional notions of blameworthiness, Kent, supra, so should the determination of "victim fault" be measured. After presuming the defendant's knowledge, liability under strict liability is determined by the same inquiry as in negligence cases, i.e., the "reasonable man" standard. A finding of contributory negligence involves identical inquiry, Smolinski v. Taulli, 276 So.2d 286 (La.1973). We are therefore of the opinion that the "victim fault" defense to strict liability first enunciated in Loescher v. Parr, 324 So.2d 441, 449 (La.1975) is but a euphemism for the traditional affirmative defenses of assumption of risk and contributory negligence. Thus, if the plaintiff actually knows or should have known of the risk, and fails to act reasonably in response, his recovery should be barred regardless of whether the defendant's fault is in negligence or strict liability. Certainly, contributory negligence of the victim should bar his recovery in a situation where the defendant's knowledge is merely presumed, if it does so when the defendant actually or constructively knows of the risk, see Sullivan v. Gulf States Utilities, 382 So.2d 184, 189-190 (La.App. 1st Cir.1980) writ ref. 384 So.2d 447 (La.1980). The tenets of Kent drawn to their logical conclusion compel us to find that contributory negligence is a form of "victim fault," despite the tenuous policy distinctions drawn in Dorry, supra.[4]
We further uphold the jury's finding that Mr. Lovell was contributorily negligent. The record reflects no attempt whatsoever by Mr. Lovell to comply with safety precautions printed on the Dirt Buster. As a result, the connection between the power cord and the extension cord was allowed to be unprotected in what amounted to a puddle of water. This was certainly a cause-in-fact of the accident, as testified to by all experts at trial. Expert testimony at trial also indicated that Mr. Lovell's standing barefooted in a nearby wet area greatly increased the possibility of a fatal electric shock, since the tennis shoes which he removed prior to spraying might have prevented the conduction of electric current through his body into the earth. We therefore find that Mr. Lovell did not conduct himself as would a reasonably prudent person under similar circumstances, Smolinski, supra, and therefore plaintiff cannot recover, due to the "victim fault" of the deceased.

*1353 DECREE
Therefore, for the above and foregoing reasons, judgment of the trial court in favor of Britt-Tech Corporation, dismissing plaintiff's suit at her costs, is hereby affirmed. All costs of this appeal are assessed to plaintiff-appellant, Anne Ochsner Lovell.
AFFIRMED.
NOTES
[1] The Dirt Buster was manufactured by Britt-Tech Corporation, but was labeled and marketed as the product of Earl Grissmer Company, Inc. Made parties defendant in the suit were Earl Grissmer Company, Inc.; American Mutual Liability Insurance Company, an insurer of Earl Grissmer Company; Harbor Insurance Company, an insurer of Earl Grissmer Company; Cotter & Company, a distributor of the Dirt Buster; Westbrook Associates, Inc., a distributor of the machine; Pluto Corporation, manufacturer of the liquid detergent used in the machine; Commercial Union Insurance Company, primary insurer of Pluto Corporation; Continental Casualty Company, excess insurer of Pluto Corporation; Southdowns Hardware & Paint Company, which leased the machine to the decedent; United States Fidelity & Guaranty Company, insurer of Southdowns Hardware; Britt-Tech Corporation, manufacturer of the Dirt Buster; Home Insurance Company, primary insurer of Britt-Tech; and Fireman's Fund Insurance Company, excess insurer of Britt-Tech. Cotter & Company, Westbrook Associates, Inc.; and Pluto Corporation (and its insurers) were dismissed without prejudice on motion of plaintiff prior to trial. Southdowns Hardware and its insurer settled with plaintiff prior to trial. Earl Grissmer Company and its insurers settled with plaintiff during the course of trial.
[2] Earl Grissmer Company, Inc. and American Mutual Liability Insurance Company also filed a devolutive appeal; however, no briefs, motions, or other pleadings have been filed in this court in connection therewith.
[3] Earl Grissmer Company, American Mutual Liability Company, Harbor Insurance Company, Cotter & Company, and Pluto Corporation filed third party demands against Britt-Tech Corporation and Home Insurance Company, seeking tort indemnity and/or contribution. The third-party claimants also alleged that Britt-Tech and its insurer should provide a defense for third-party plaintiffs. The third-party demands were dismissed with the principal demand, and are not at issue on appeal.
[4] This holding has continued viability notwithstanding the onset of comparative negligence in Louisiana tort law. Under La.Civ.Code art. 2323 (as amended by Acts 1979, No. 431, § 1), comparative negligence shall apply, "[w]hen contributory negligence is applicable to a claim for damages[.]" Thus, following Dorry, comparative negligence would apply in some strict liability cases but not in others. Inasmuch as comparative negligence is a doctrine intended to ameliorate some of the inequities in the present system of tort law, a failure to apply the doctrine across the board in strict liability cases would be enigmatic.