Sheila SCHNEIDER, et al.

v.

ELI LILLY AND COMPANY, et al.

Civ. A. No. 80–2693.

United States District Court,
E.D. Louisiana.

Feb. 22, 1983.

Lawrence J. Smith, Cynthia H. Davidson, New Orleans, La., for plaintiffs.

Charles L. Chassaignac of Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., and Laurel H. Corn, of Shook, Hardy & Bacon, Kansas City, Mo., for defendant Eli Lilly & Co.

CHARLES SCHWARTZ, Jr., District Judge.

Plaintiffs Sheila Schneider and her husband, John Schneider, have brought this lawsuit against various defendants,[1] including Eli Lilly and Company (Lilly), alleging that Sheila Schneider has suffered personal injury as a result of exposure to diethystilbestrol (DES) which her mother allegedly ingested while pregnant with plaintiff. Lilly denies that plaintiff was exposed to DES; however, for purposes of the motion

currently before the Court, Lilly assumes as true plaintiffs' allegation of DES exposure, and has moved to exclude evidence relating to the efficacy or lack of efficacy of DES at the trial of this matter, claiming that evidence on the issue of the efficacy of DES in preventing certain accidents of pregnancy is not relevant to any claim involved in this lawsuit. Following oral argument, defendant's motion was taken under submission. After consideration of the memoranda submitted by the parties, the record herein, and the law applicable to this matter, the Court denies in part and grants in part the motion of Lilly for the following reasons.

Plaintiffs' complaint alleges that "there is a direct proven relationship between the prenatal ingestion of the drug DES by her mother, Mrs. O'Brien, and the subsequent development of clear cell adenocarcinoma by the plaintiff, Sheila Schneider." Plaintiffs claim that liability exists for this alleged injury under various theories, including strict liability, arguing that under the law of Louisiana, which is controlling in this diversity case, a manufacturer is presumed to know of the vices of the thing he makes, whether or not he has actual knowledge of the defective condition. Lilly contends that evidence relating to efficacy is inadmissible as irrelevant in a determination of the standard of liability for a drug. Lilly argues such liability turns on a drug manufacturer's failure to warn of risks which should have been known at the time of the manufacture of the drug, and not by after-acquired knowledge. Specifically, Lilly contends that the issue of its liability will turn on the question of whether Lilly failed to warn of the risk of clear cell adenocarcinoma. Therefore, according to Lilly, whether DES was efficacious is not a relevant inquiry in regard to the adequacy of the warnings given by Lilly. Defendant relies heavily on Section 402A, Restatement (Second) of Torts, and decisions rendered in other jurisdictions in support of its position.

1. All other defendants were dismissed following hearing on motion for summary judgment by the defendants. See the Court's Order of November 19, 1980.

The Louisiana law regarding products liability, which this Court is bound to follow, encompasses more than a failure to warn of risks which should have been known at the time of the manufacture of the drug. In fact, in a strict liability case under Louisiana law, in cataloguing the plaintiff's burden of proof, the *only* element the plaintiff is relieved of proving is that the owner of the defective thing knew or should have known of the risk involved.

> The claimant must still prove that under the circumstances the thing (causing the injury) presented an unreasonable risk of harm which resulted in the damage (or must prove, as some decisions have characterized this element of proof, that the thing was defective). The resulting liability is strict in the sense that the owner's duty to protect against injurious consequences resulting from the risk does not depend on actual or constructive knowledge of the risk, the factor which usually gives rise to a duty under negligence concepts. Under strict liability concepts, the mere fact of the owner's relationship with and responsibility for the damage causing thing gives rise to an absolute duty to discover the risks presented by the thing in custody.
>
> Accordingly, the standard for determining liability is to presume the owner's knowledge of the risk presented by the thing under his control and then to determine the reasonableness of the owner's conduct, in the light of that presumed knowledge.

*Kent v. Gulf States Utilities Co.,* 418 So.2d 493, 497 (La.1982). Application of this standard to a products liability setting results in the presumption that the manufacturer knows of the dangerous propensities of its product and is strictly liable for injuries resulting from the product's unreasonable risk of injury in normal use. *Weber v. Fidelity & Casualty Co. of N.Y.,* 259 La. 599, 250 So.2d 754 (La.1971). The plaintiff claiming injury has the burden of proving that the product was unreasonably danger-

ous to normal use (i.e. defective) and the plaintiff's injuries were caused by reason of the defect. *Weber,* supra.

The Louisiana Supreme Court recently traced the history of strict liability in Louisiana and noted the pervasive influence of section 402A of the Restatement (Second) of Torts on the requirement that a defective product must be "unreasonably dangerous," quoting from comment "i" of that section:

> "The article must be dangerous to an extent beyond which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

*DeBattista v. Argonaut-Southwest Ins. Co.,* 403 So.2d 26, 31 (La.1981). Unlike a number of other jurisdictions that have abrogated the requirement that the defect be "unreasonably dangerous," the Louisiana Supreme Court determined in *DeBattista* that the requirement of an unreasonable danger or risk as a condition to strict liability should be retained. Thus, the primary focus is on the product itself and whether it is unreasonably dangerous to normal use. *Hunt v. City Stores, Inc.,* 387 So.2d 585 (La.1980), *Weber,* supra. In determining whether the danger or risk of harm is unreasonable, the probability and magnitude of the risk are to be balanced against the utility of the thing. *Hunt,* supra, *Lovell v. Earl Grissmer Co., Inc.,* 422 So.2d 1344, 1348 (La.App. 1st Cir.1982).

Here, the probability of risk of clear cell adenocarcinoma must be balanced against the usefulness or efficacy of the drug DES. Plaintiffs argue that efficacy is relevant because if the pharmaceutical industry had informed physicians of the fact that the drug was not efficacious it never would have been prescribed and caused plaintiff's cancer. However, the product literature circulated to physicians in 1950 advised them that DES "may have value" as an aid in cases of threatened and habitual abortion.[2] Clearly, at the time plaintiff's

---

2. The product literature for Lilly's DES advised physicians as follows in 1950:

Recent work has indicated that diethylstilbestrol may have value as an aid in preven-

mother allegedly ingested DES the pharmaceutical industry and physicians prescribing the drug believed it to be efficacious in certain situations. The risk of plaintiff's contracting clear cell adenocarcinoma must therefore be balanced against the usefulness of the drug in preventing abortion in pregnant women. Under *Weber,* supra, the plaintiff must prove that the product was defective, i.e., unreasonably dangerous to normal use; that the product was in normal use at the time the injury occurred; that the product's defect caused his injury; and that the injury might reasonably have been anticipated by the manufacturer.

The date of plaintiff's conception, January, 1950, becomes a relevant and controlling factor under the aforesaid standard. Since the utility of the drug must be balanced against any risks that might reasonably have been anticipated at the time the injury occurred, i.e., no later than January, 1950, submission of evidence relative to efficacy of DES must be limited up to that period of time. In determining whether the drug was unreasonably dangerous in normal use the existence or lack of a warning of any danger inherent in the product's normal use may also be considered. See *Chappuis v. Sears, Roebuck & Co.,* 358 So.2d 926 (La.1978). "Normal use" has been defined as the "foreseeable" or "intended" use of a product. *Byrd v. Hunt Tool Shipyards, Inc.,* 650 F.2d 44, 47 (5th Cir.1981). Thus, we cannot agree with plaintiffs' argument that under Louisiana law the manufacturer is conclusively presumed to know even the future defects of his product. To hold a manufacturer of a product with inherent possibilities for harm responsible for all future knowledge would make such a manufacturer retroactively responsible for all unforeseen defects. The introduction of evidence beyond 1949 could, in effect, make Lilly the absolute insurer of its product, which is the very result that the law in Louisiana seeks to prevent. See *DeBattista,* supra. Accordingly, while evidence of

tion of certain types of accidents of pregnancy, such as threatened abortion, habitual abortion, and in diabetic women, eclampsia, premature delivery, and death in the fetus.

the efficacy or lack thereof of the drug DES will be permitted at trial, such evidence will be limited to that time period up to January, 1950. Defendant's motion to exclude this evidence is hereby denied in part and granted in part as delineated hereinabove.

(See defendant's motion at p. 2)