482 So.2d 1056 (1986)
Cecil MOBLEY, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, et al., Defendants-Appellees.
No. 84-1065.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1986.
Writ Denied April 11, 1986.
*1058 Fuhrer, Flournoy & Hunter, George A. Flournoy, Alexandria, for plaintiff-appellant.
Hudson, Potts & Bernstein, Jesse D. McDonald, Monroe, Gold, Simon, Weems, Bruser, Sharp, Sues & Rundell, Edward F. Rundell, Alexandria, and Brittain & Williams, Jack O. Brittain, Natchitoches, for defendants-appellees.
Before STOKER, YELVERTON and KNOLL, JJ.
STOKER, Judge.
Cecil Mobley, a service station operator, sustained serious injuries to his hand when a 16-inch tire he was airing separated from the 16.5-inch rim on which he was trying to mount it, causing an explosion. The tire was brought to Mobley's station by Curling Brinson, and was to be placed on Brinson's 1977 Chevrolet pickup truck. Mobley sued Brinson, General Tire & Rubber Company (the tire manufacturer), Kelsey-Hayes Company (the rim manufacturer), and General Motors Corporation (the pickup truck manufacturer) in products liability, claiming that the tire, rim and pickup were defective because there were no warnings of the serious injury that could occur from mismatching tires and rims.
The trial judge dismissed Brinson on a directed verdict. The jury found no liability on the part of the remaining defendants. Mobley moved for a new trial based on improper voir dire, attorney misconduct, and error in failing to allow evidence of subsequent changes in the products' warnings. He also claimed that the jury's verdict was contrary to the law and evidence. The trial judge denied the motion for a new trial, with excellent reasons for judgment. Mobley appeals, based on the same assignments of error.

JURY VERDICT
The jury found that Mobley's injuries were not caused by negligence on the part of the defendants. They also concluded that the accident was not caused by a defect in the tire, rim or truck. There was in fact no defect in either of these items. The plaintiff's injuries occurred as a result of his attempt to mismatch a tire and rim which were not of the same size. The appellant evidently has no objection to the jury instructions; he only contests the jury's application of them to the facts of this case. In appellate review the reviewing court must not only find in the record a reasonable factual basis for the trial court's finding; under the manifest error rule the reviewing court must make a further determination that the record establishes that the finding was not clearly wrong.
Mobley was the operator of the service station where the accident occurred. He did not sell tires, and he had no formal training in fixing flats or changing tires. Curling Brinson said that a sign at Mobley's station read: "We fix flats," though that testimony was disputed. Nevertheless, Mobley agreed to remove a tire from Brinson's wheel, and replace it with a tire Brinson supplied. Mobley testified that he knew he should replace a tire with one of the same size. He saw the 16.5 marking on the old tire, and the 16 on the tire brought in by Brinson, but plaintiff said that he did not know that .5 had any significance. He removed a tubeless tire from the rim and proceeded to mount the tire supplied by Brinson, together with a tube. He began to air the tire, but it appeared crooked and would not seat. He gauged the pressure at 40 p.s.i. He knew that 40 p.s.i. was the maximum pressure advised in seating a tire. He deflated the tire, straightened out the tube, then tried again. This time he continued to inflate the tire past 40 p.s.i., until the bead broke and the tire abruptly separated from the rim. (The bead is a bundle of steel reinforcing wires fabricated into the inner perimeters of the tire, which hold the tire snugly against the rim.) One expert testified that the air pressure reached 80 to 100 p.s.i. The tire was propelled across the highway.
The appellant claims that the lack of adequate warnings constituted defects in *1059 the products. He would require that the tire, rim and truck bear some sort of markings stating that a tire mounted on an improper rim might explode, causing injury or death. We fail to see how such a warning would have prevented Mobley's accident. Two separate acts were required to cause the bead to break: (1) placing a 16-inch tire on a 16.5-inch rim, and (2) inflating the tire beyond 40 p.s.i. General Tire affixed a gummed label to the tread of the tire before it left the factory, which gave instructions as to how to seat a tire. The label admonished the tire changer never to inflate beyond 40 p.s.i. to seat the beads, and warned: "Failure to conform to these mounting instructions can cause the bead to break and the assembly to burst with force sufficient to cause serious injury." A residue was found on the tire which showed that some label had at one time adhered to the tire. Mobley testified at first that he could not remember whether it was on the tire when Brinson brought it in. Later he stated that there was no label. In any case, Mobley testified that he knew not to mismatch tires and rims, and that he knew that a tire might explode if overinflated. He was even aware that the explosion might cause injuries such as the ones he suffered.
After oral argument, counsel for plaintiff filed a supplemental brief in which he vigorously challenges any suggestion that the warning label was fixed to the tire in question on the ground that the tire was a used tire, not a new tire. The testimony does not clearly establish whether the tire was new or used. As we view the case, whether the tire was new from the factory or used is not determinative of liability here. As we shall demonstrate, liability is based on what Mobley knew for which he therefore needed no warning. For purposes of deciding this case we will conclude that the tire was a used tire which appeared to be new.[1]
Mobley testified that he saw the old tire was marked 16.5, but he ignored the .5. He may not have had much education, but it was demonstrated that he understood the concept of fractions. We do not believe that it required any tire or rim expertise to deduce that a size 16-inch rim and a size 16.5-inch rim had different dimensions. Most importantly, Mobley knew of the danger. The danger was that a tire would fly off the rim if overinflated. The evidence showed that he placed more than double the maximum recommended air pressure in the tire. He was familiar with the 40 p.s.i. limit. He was aware of the consequences of exceeding that limit. He even realized that injuries such as his might be sustained as a result of overinflation. A notation on either the tire or the rim to use only a 16.5 inch tire would have meant nothing to Mobley, as he believed that 16 and 16.5 were the same. We can conceive of no warning which would have told Mobley any more than he already knew. Therefore, we cannot say that the jury erred in concluding that Mobley's injuries were not caused by a lack of warnings in any of the products.

*1060 VOIR DIRE
The appellant asserts that the jury was influenced by improper voir dire questions which were designed to influence the jury in favor of the defendants' case. He claims that the questions were so prejudicial that a reversal is in order. At trial the plaintiff objected when the prospective jurors were asked by the defendants' counsel whether they would follow the law if the judge instructed them that the defendants had no duty to warn, whether they knew to replace a tire with one of the same size, whether they were aware of the pressure limits in filling tires, and other similar matters.
LSA-C.C.P. Article 1763 allows the court to examine prospective jurors on any subject it may deem appropriate. The court also sets the bounds of the parties' examination. Voir dire questions are not limited to juror qualifications; they may also seek to identify bias or prejudice on the part of a juror. Counsel may not, however, pose prejudicial questions under the guise of determining bias. Morgan v. Liberty Mutual Insurance Company, 323 So.2d 855 (La.App. 4th Cir.1975). The trial judge is given broad discretion in defining the scope of voir dire, and his rulings will not be disturbed absent abuse of discretion. Trahan v. Odell Vinson Oil Field Contractors, Inc., 295 So.2d 224 (La.App.3d Cir.1974).
Counsel for the appellant asked questions quite similar to those he found objectionable. He inquired whether jurors thought that a rim should be manufactured so that it will accommodate a smaller tire, whether warnings should be placed on such a rim, and whether they would hold a manufacturer liable for failing to warn when it had a duty to do so.
In denying the plaintiff a new trial, the trial judge stated:
"It is this Court's view that voir dire was not unduly restricted or controlled in any fashion that could be viewed one sided. One venireman did express very strong views that clearly indicated that he had fixed opinions which were unlikely to change. His comments were, however, responsive to questions by counsel, and he was immediately excused when challenged. The selection process employed allowed the attorneys to view and question eighteen veniremen at a time and challenges for cause were allowed until the full panel was accepted by counsel and sworn."
Plaintiff urges that the questions posed to prospective jurors by the attorneys for defendants were beyond the acceptable scope of voir dire. However, we find no prejudice against the plaintiff-appellant. Both sides of the case were represented during the questioning, and sufficient challenges were available to excuse any venireman who had been unduly influenced by the process. We find no abuse of discretion on the part of the trial judge in refusing to grant a new trial based on improper voir dire.

ATTORNEY MISCONDUCT
During trial, counsel for General Motors asked Mobley if he remembered being warned just prior to the explosion that he was overinflating the tire. When he said no, counsel asked if he would be willing to "jog his memory" by listening to a tape recording of the voice of a man who claimed he gave that warning. The man who allegedly made the statement was deceased at the time of trial. The attorney dramatized his question by standing with a cassette recorder in his hand within the jury's view. The plaintiff objected strenuously, and the jury was removed from the courtroom. The plaintiff then moved for a mistrial. The court denied the motion, but gave extensive instructions to the jury to disregard the existence of the hearsay testimony. The judge later said he was having second thoughts about not granting the mistrial. The plaintiff withdrew the motion, reserving his right to raise the issue again. Counsel for the defendants objected to the reservation, and the court stated its belief that the withdrawal of the motion constituted a waiver of the right to bring it up later. After the adverse verdict, the *1061 plaintiff raised the incident, which he labeled "attorney misconduct," as a ground for a new trial. The judge reasoned that the hearsay testimony would have been admissible had the plaintiff not objected to it; therefore, "it was the questioning technique, not the evidence itself, that was improper." He concluded:
"When this problem surfaced, the Court was most concerned that overreaction by the Court would focus too much attention on the matter and exacerbate the effect of the question. For this reason the matter was dealt with deliberately and with ample time for all concerned to fully consider what action they wished to take. When it was indicated that plaintiff would waive his motion for mistrial, the waiver was put on the record. It appeared then, and still does, that counsel should be permitted to select and employ the tactics viewed as most likely to further the litigants best interest. Because the motion for mistrial was withdrawn, it is the Court's opinion that this matter cannot be a basis for grant [sic] of a new trial."
The appellant argues that the denial of a new trial was based solely on a mistake of law by the judge in concluding that the issue could not be considered. We disagree. A mistrial may be granted in a civil case, but a motion must be made at trial before redress can be sought. Troxler v. Hertz Corp., 385 So.2d 507 (La.App. 4th Cir.1980), writ denied, 393 So.2d 736 (La.1980); Wilson v. Virgademo, 258 So.2d 572 (La.App. 4th Cir.1972). The withdrawal of the motion for mistrial negated the objection made by the plaintiff's counsel, and constituted a waiver of any further objection. We can find no authority for the reservation of an objection. In fact, in Johnson v. H.W. Parson Motors, Inc., 231 So.2d 73 (La.App. 1st Cir.1970), where the trial judge allegedly made prejudicial comments upon the evidence in the jury's presence, the court said, at pages 78-79:
"We feel counsel for appellants should have made his objection before the trial court or if he felt the statement so prejudicial, he should have moved for a mistrial; instead, counsel for appellants was willing to permit the jury to consider the case and only after appellants have received an unfavorable verdict and judgment is this error urged as a basis for reversal and a new trial. We feel under the circumstances appellants waived the objection and cannot now be heard to complain. [citations omitted]"
While an objection was made here, we believe that the rationale stated above militates against allowing a withdrawal with reservation. Though we understand the dilemma of plaintiff's counsel, the requirement of a simultaneous objection would be meaningless if a party could reserve the right to register an objection until after an adverse verdict. We agree with the trial judge that a new trial was not appropriate on this ground because the issue was not before him.
Even if the objection could have been reserved, we do not believe that prejudice occurred which was not cured by the court's admonitions to the jury. The jury saw examples of hearsay testimony in a film for jurors shown before trial, and careful instructions were given for them to disregard the statement of the deceased witness as hearsay. In addition, the evidence showed that Mobley knew of the 40 p.s.i. limit, and knew that he was passing the limit. The tape recording allegedly contained the statement of a man who had warned Mobley that he was overinflating the tire. The statement added no substance to the evidence and could only have served to impeach Mobley. As we believe there was sufficient evidence to warrant a verdict in favor of the defendants, we do not believe that the plaintiff was prejudiced by the incident. Therefore, the conduct did not form sufficient basis for a new trial. Troxler and Wilson, supra.

SUBSEQUENT CHANGES
The plaintiff attempted to introduce at trial a tire and a rim manufactured by General Tire and Kelsey-Hayes respectively after Mobley's accident on which there *1062 were warnings or instructions concerning mismatching, and testimony concerning the markings. Prior to trial, the defendants stipulated to the feasibility of placing such information on the products at the time that Mobley was injured. In conjunction with the stipulation, they filed a motion in limine to prevent the introduction of evidence of the addition of these warnings. At various times during the trial, the judge refused to admit testimony and exhibits showing that changes had been made in the products, as he believed they were inadmissible under Louisiana law. He also denied a new trial based on these grounds. Mobley asserts on appeal that the subsequent measures were admissible in a products liability action, or that they should have been admitted to show feasibility or to impeach the defendants' expert witnesses.
Subsequent product changes generally are inadmissible to show negligence or culpability. Esta v. Dover Corp., 385 So.2d 439 (La.App. 1st Cir.1980), writ denied, 392 So.2d 690 (La.1980); Lovell v. Earl Grissmer Co., Inc., 422 So.2d 1344 (La.App. 1st Cir.1982), writ denied, 427 So.2d 871 (La. 1983). Some other jurisdictions have recognized an exception in products liability cases, citing policy considerations not present in a negligence action. See Ault v. International Harvester Co., 13 Cal.3d 113, 117 Cal.Rptr. 812, 528 P.2d 1148 (1974); Shaffer v. Honeywell, Inc., 249 N.W.2d 251 (S.D.1976). Louisiana courts have expressed concern with this exception. The First Circuit said in Lovell, supra, at page 1349:
"However, we are not convinced that subsequent repairs or modifications are necessarily probative that the prior product was defective.... It is equally plausible that attempts to repair or modify represent a manufacturer's attempt to render totally innocuous a product which already occasions no unreasonable risk of harm. Additionally, such evidence is unduly prejudicial, especially in a trial by civil jury. Inasmuch as the prejudicial effect of this type of evidence outweighs greatly its probative value, we find that attempts to repair or modify subsequent to an occurrence have no legal relevance, and evidence of same were properly excluded by the trial judge."
It is apparent to us that Louisiana courts are not completely convinced that a products liability exception should be created.
Even if such an exception did exist, we would find no reversible error in the judge's failure to admit the evidence. The markings placed on the products after the incident would not have prevented Mobley's injuries. Mobley knew that he had removed a 16.5-inch tire from the rim, and was replacing it with a 16-inch tire. He stated that he thought the two were the same size. A warning to only place a 16.5-inch tire on the rim would not have stopped him from trying to mount the 16-inch tire.
Other testimony adduced at trial made the same points that the plaintiff intended to make with the excluded evidence. At the time of Mobley's accident, testimonial evidence established that other tire companies included the warnings that were later added by the defendants. The jury simply concluded that no warning would have prevented Mobley's injuries.
Mobley argues that the evidence was admissible to show the feasibility of placing warnings on the products, and to impeach the expert witnesses who suggested it was not feasible. The defendants filed a stipulation before trial in which they conceded that "it was technically feasible for identifying data, words of instruction and words of warning, to be molded or stamped into wheels and tires such as those involved in the accident out of which this litigation arises, or affixed thereto by label." This precluded the use of the evidence to show feasibility.
The defendants' expert witnesses testified that the labeling suggested by the plaintiff would be ineffective and ill-advised. The plaintiff sought to impeach the witnesses by asking why they now include some of that language on their products. We do not believe that the subsequent changes would have discredited the testimony. *1063 As the court noted in Lovell, supra, there are many reasons for changing a product, and not all of them serve as admissions of a defect.
In conclusion, we do not feel that the evidence of the addition of warnings after the date of this accident was admissible under any exception recognized in Louisiana to the general rule excluding such evidence. Even if an exception were applicable, the exclusion by the trial judge caused no prejudice to the plaintiff-appellant, and would not have changed the result of this case. We have already stated that additional warnings for Mobley were not necessary. He already knew as much as he needed to know, and he did what he knew he should not do.

CONCLUSION
The verdict of the jury finding the defendants free from liability to the plaintiff was correct, as was the trial judge's denial of a new trial. The judgment of the trial court is affirmed. All costs are assessed to plaintiff-appellant, Cecil Mobley.
AFFIRMED.
NOTES
[1] Plaintiff's counsel concedes in his original brief that the tire "looked to be a new tire in good shape." Mr. Mobley was asked on direct examination: "And did it appear to be in good condition?" In reply Mobley stated: "It appeared to be a new tire." Tr. 1642, Vol. VIII. The testimony of the purchaser of the tire, Curling Brinson, is to the contrary. In a deposition proffered as Plaintiff's Exhibit 42 on Transcript pages 820 and 821 (Vol IV), Brinson was asked questions directed to this point. First he was asked if the tire looked like new. He replied: "Well, it was a good tire, but it wasn't new, wasn't no new tire." He was then asked whether the tire looked like it had ever been on the road, to which he replied: "Yes sir, to me it did." At trial this deposition testimony was read to Brinson to refresh his memory, and these statements came into the record. Tr. 1545, Vol. VII. As the testimony is contradictory, it is inconclusive. Balanced against this testimony is the testimony of Wendell D. Kegg, expert witness for General Tire & Rubber Company, that after the accident the tire had a residue on it indicating that a label had been glued to the tire at sometime. Also, as counsel for General Tire & Rubber Company points out, in answer to plaintiff's supplemental brief, Kegg testified that he examined the tire and found that it was a brand new tire that had never been in service. Tr. 1900, Vol. IV. In order to give plaintiff the benefit of all doubt, we will consider for purposes of this case that the tire had been used.