Mrs. Emma Jean HALPHEN,
Plaintiff-Appellee,

v.

JOHNS–MANVILLE SALES
CORPORATION,
Defendant-Appellant.

No. 82–3388.

United States Court of Appeals,
Fifth Circuit.

July 26, 1984.

---

Clark, Chief Judge, filed dissenting opinion.

Strong, Pipkin, Nelson, Parker & Bissell, John G. Bissell, Michael L. Baker, Beaumont, Tex., for defendant-appellant.

Kermit A. Doucet, Lafayette, La., Helm, Pletcher, Hogan & Burrow, Stephen W. Hanks, Houston, Tex., for plaintiff-appellee.

Robert S. Rooth, New Orleans, La., for amicus curiae Owens-Illinois, Inc.

Before CLARK, Chief Judge, POLITZ and JOHNSON, Circuit Judges.

POLITZ, Circuit Judge:

This Louisiana diversity case occasions an examination of Louisiana strict products liability law, particularly the parameters of the requirement of foreseeability, as applied to a case involving asbestos-related cancer. Johns-Manville appeals a verdict awarding damages for the illness and death of Samuel J. Halphen who succumbed to malignant mesothelioma, which the jury found was caused by exposure to asbestos products manufactured by Johns-Manville. Finding no basis for reversal, we affirm.[1]

### Facts

Samuel J. Halphen contracted and died from malignant mesothelioma, a rare form of cancer commonly caused by exposure to asbestos. Halphen worked in environments laden with asbestos dust, some emanating from products manufactured and supplied by Johns-Manville. During 1944 Halphen was employed by Asbestos and Magnesia Materials Company, a subcontractor who installed Johns-Manville manufactured asbestos insulation in the Consolidated Shipyard in Orange, Texas. In later years, Halphen worked as a mechanic and flight engineer for the United States Air Force. He may have been exposed to asbestos dust during that time.

Interrogatories were propounded to Halphen during his terminal period of hospitalization. In response to the interrogatories, Halphen stated that he worked in the Livingston Shipyards, not the Consolidated Shipyards. Halphen's recollection during the final stage of his life was not supported by his social security employment records or by a cousin who testified that he had in fact worked at Consolidated.

Halphen filed suit against 16 asbestos products manufacturers seeking recovery under the theory of strict liability. All defendants except Johns-Manville were dismissed before trial. After Halphen's death, his widow, Emma Jean Halphen, was substituted as party-plaintiff. The jury returned a verdict against Johns-Manville.

### Discussion

A. Foreseeability in Strict Liability

Stripped to its essentials, Johns-Manville's primary contention is that it cannot be held strictly liable for injuries incurred due to its failure to warn of potential dangers of its product because it could not foresee the particular harm. Specifically, Johns-Manville maintains that it cannot be held strictly accountable for asbestos-related diseases caused by its products because, when it marketed the products, it did not know that asbestos would cause serious illnesses. Johns-Manville urges the "state of the art" defense, asserting that it did not know of the product's defect, nor did anyone else, and furthermore, there was no way that it could have known. The thrust of the state of the art defense is that scientific knowledge and methods of research were not advanced enough to permit discovery of the defect.

In this diversity case we are obliged to apply Louisiana's substantive law. Louisiana law on strict products liability is of relatively recent vintage, but the infant quickly grew to adulthood. This body of law is essentially jurisprudential, although drawing its genesis from revered codical provisions.

The seminal case in which the Supreme Court of Louisiana adopted strict liability for manufacturers in products cases is

---

1. This appeal is not stayed as a consequence of the Johns-Manville petition for a Chapter 11 reorganization in bankruptcy court in the Southern District of New York, having been authorized by the bankruptcy court with the understanding that the plaintiff will look solely to the supersedeas bond in satisfaction of judgment.

*Weber v. Fidelity & Casualty Ins. Co. of N.Y.*, 259 La. 599, 250 So.2d 754 (1971). Johns-Manville advances what it perceives to be an inconsistency or confusion in the language of the *Weber* holding on the critical question of foreseeability. The Louisiana Supreme Court held:

> A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by the defect in the design, composition, or manufacture of the article, *if the injury might reasonably have been anticipated.*

*Id.* at 755 (emphasis added). Johns-Manville argues from this language that not only must the injury be foreseeable but the defect must also be foreseeable. However, the Louisiana high court continued:

> If the product is proven defective by reason of its hazard to normal use, the plaintiff need not prove any particular negligence by the maker in its manufacture or processing; for *the manufacturer is presumed to know of the vices in the things he makes, whether or not he has actual knowledge of them.*

*Id.* at 756 (emphasis added). This holding imposes a presumption of knowledge of the defect which requires no showing of foreseeability.

A careful reading of the Louisiana cases reflects the distinction between foreseeability of the defect and foreseeability of the harm that might flow from the defect. For example, in *Hunt v. City Stores, Inc.*, 387 So.2d 585, 589 (La.1980), the court stated:

> [T]he plaintiff in a products liability suit must only prove that the product was defective, i.e., unreasonably dangerous to normal use; that the product was in normal use at the time the injury occurred; that the product's defect might cause his injury; and *that the injury might reasonably have been anticipated by the manufacturer. It is unnecessary to prove that the manufacturer was negligent because he knew or should have known of the dangerous condition of the product at the time of the manufacture or sale.* The focus is on the product itself and whether it is unreasonably dangerous to normal use.

(Emphasis added). These two sentences, which leave a mite to be desired for precision writing, are logically consistent only if the foreseeability element is taken to mean that the injury must be foreseeable when viewed in light of the knowledge of the dangerous defect. The injury must be foreseeable; the defect need not be. That interpretation is internally consistent and is consistent with the holdings in other Louisiana cases. *See, e.g., Philippe v. Browning Arms Company*, 395 So.2d 310 (La. 1980).

Foreseeability of the risk, as distinguished from the foreseeability of injury once the risk is actually or constructively known, is the hallmark of a negligence action; it is the antithesis of a strict products liability action: "The distinction between the two theories of recovery lies in the fact that the inability of a defendant to know or prevent the risk is not a defense in a strict liability case but precludes a finding of negligence." *Hunt* at 588. *See also, Entrevia v. Hood*, 427 So.2d 1146 (La.1983).

 The thrust of Louisiana law is certain—in a strict products liability case, the manufacturer is presumed to know the defects of its product. The presumption suffices; no proof is necessary. The injured party need only show that the *injury* would reasonably be foreseeable to one with knowledge (actual or imputed) of the defect. The Louisiana Supreme Court bright-lined this rule in *Kent v. Gulf States Utilities Co.*, 418 So.2d 493 (La.1982):

> In products liability cases, the manufacturer is presumed to know the dangerous propensities of its product and is strictly liable for injuries resulting from the product's unreasonable risk of injury in normal use. The claimant nevertheless must prove that the product presented an unreasonable risk of injury in normal use (regardless of the manufacturer's knowledge), *thus in effect proving the manu-*

*facturer was negligent in placing the product in commerce with (presumed) knowledge of the danger.*

*Id.* at 498 n. 6 (emphasis in original).

Johns-Manville invites our attention to *Lartigue v. R.J. Reynolds Tobacco Company*, 317 F.2d 19 (5th Cir.1963), as a controlling precedent for its state of the art, lack of foreseeability defense. In *Lartigue,* we predicted that Louisiana would not hold a cigarette manufacturer strictly liable for failure to warn of the dangers of cigarette smoking. *Lartigue* no longer has precedential value. First, eight years after our *Lartigue* prognostication Louisiana adopted the rule of strict liability for products. Second, *Lartigue* relied on a prior draft of § 402(a) of the Restatement of Torts which related only to foodstuffs. The current Restatement section encompasses any unreasonably dangerous product. Third, the restrictive view of strict liability taken in *Lartigue* did not correctly anticipate the direction taken by the Louisiana courts. When *Lartigue* was decided, only 19 states had adopted the Restatement's view. Now virtually all jurisdictions have adopted rules on strict liability. Louisiana has adopted a broad, liberal view. *See, e.g.,* Robertson, "Manufacturers' Liability for Defective Products in Louisiana Law," 50 Tul.L.Rev. 50 (1975). Our prediction in Lartigue missed the mark; Louisiana opted for a different course.

■ It is our present perception of Louisiana law that a manufacturer is presumed to know the defects in its product. Foreseeability is not an element in that equation. Foreseeability, in a Louisiana products liability case, applies only to the question of injury. *See, e.g., DeBattista v. Argonaut-Southwest Ins. Co.,* 403 So.2d 26 (La.1981). The essential inquiry, then, is whether a manufacturer, with knowledge of the defect, should reasonably anticipate the injury. In this case, Johns-Manville was presumed to know that its product was defective, specifically, Johns-Manville was presumed to know that its product would cause, exacerbate or enhance carcinomatous growths. With that presumed knowl-

edge, the suggestion that Johns-Manville could not foresee Halphen's malignant mesothelioma falls of its own weight.

**B. Sufficiency of Evidence**

■ Johns-Manville next maintains that there was insufficient evidence to support a finding that its asbestos products played a substantial part in Halphen's illness and death. We disagree.

There is no dispute that Halphen died of mesothelioma. There is no dispute that this particularly rare type of cancer is linked to and is most prevalent among persons who have been exposed to asbestos particles. The evidence showed that Halphen was employed by a company at a time when that company was using Johns-Manville's asbestos products. The evidence also showed the likelihood that Halphen was exposed to the asbestos during this employment.

■ The jury found sufficient evidence to connect Halphen's mesothelioma to Johns-Manville's asbestos products. We will reject a jury's factual findings only when the "facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict." *Boeing v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969). The jury's findings in the instant case pass *Boeing v. Shipman* muster.

**C. Inconsistency of Interrogatories**

In its final argument, Johns-Manville contends that the testimony given by Annie Wilson, Halphen's cousin, that Halphen worked in the Consolidated Shipyard in Orange, Texas, as well as the testimony given by other former employees of Consolidated about the working conditions should have been excluded. In an answer to an interrogatory made shortly before his death, Halphen stated that he had worked in the Livingston Shipyard, not the Consolidated Shipyard. Johns-Manville, relies on Fed.R. Civ.P. 26(e)(2), which states:

A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which (A) he knows that the response was incorrect when made, or (B) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

Johns-Manville asserts that the failure to amend the answer to the interrogatory after Halphen died, when it became clear to Mrs. Halphen and her counsel that the answer was incorrect, constituted a knowing concealment.

The evidence does not support the charge of knowing concealment. Johns-Manville was: (1) supplied with copies of Halphen's social security records which showed his employment at Consolidated, (2) informed by appropriate pre-trial notice of plaintiff's intent to call as witnesses two former Consolidated employees, and (3) was afforded proper notice of plaintiff's intent to call Annie Wilson as a witness.

The standard under Rule 26(e)(2) is whether the party was "prejudicially surprised." *Shelak v. White Motor Co.*, 581 F.2d 1155, 1159 (5th Cir.1978). The rule seeks to prevent "trial by ambush." *Dilmore v. Stubbs*, 636 F.2d 966, 969 n. 2 (5th Cir.1981). A reversal under this rule is only justified when a party seeks to introduce a completely new issue or an unidentified witness. *F & S Offshore, Inc. v. K.O. Steel Castings, Inc.*, 662 F.2d 1104 (5th Cir.1981). We do not find knowing concealment within the intendment of Rule 26(e)(2).

AFFIRMED.

CLARK, Chief Judge, dissenting:

The majority opinion aptly describes Louisiana law as it pertains to foreseeability in products liability for design and manufacturing defects. The opinion misses the mark, however, in applying these principles indiscriminately to this case, which is predicated not on a design or manufacturing defect, but on a marketing defect, namely the failure to warn of the then unforesee-able inherent dangers of properly prepared products containing asbestos. *See generally Carter v. Massey-Ferguson, Inc.*, 716 F.2d 344, 346 n. 1 (5th Cir.1983), and authorities cited there (distinguishing the several actionable defects encompassed by the term of art "defective"). The distinction is not academic, but goes to the heart of the "fault" concept that underlies Louisiana products liability.

All of the precedent cited by the majority opinion as establishing a presumption of knowledge of product defects deals with presuming knowledge of manufacturing or design defects. In each case, that presumption of knowledge is predicated on the concept of "fault," which is the basis for the imposition of strict liability under C.C. Art. 2315: "Every act whatever of man that causes damage to another obliges him by whose *fault* it happened to repair it * * *" (emphasis added).

As demonstrated by the cases cited in the majority opinion, the Louisiana Supreme Court has consistently framed its determinations of presumed knowledge of defect in terms of this statutory requirement of "fault." In *DeBattista v. Argonaut-Southwest Insurance Co.*, 403 So.2d 26, 29 (La.1981), the Louisiana Supreme Court noted generally that "fault signifies that conduct which a man should not have engaged in—that is, that he has acted as he should not have acted," *citing* 2 Colin et Capitant, Cours elementaire de droit civil francais (8e Ed.1935) § 190. Citing the same passages cited by the majority opinion, the *DeBattista* court noted that *Weber* had attempted to define "fault" for purposes of product liability. *DeBattista* quoted *Weber*: "the plaintiff need not prove any particular negligence by the maker in its *manufacture* or *processing*; for the manufacturer is presumed to know the vices in the things he makes ...." 403 So.2d at 30 (emphasis added), *quoting* 250 So.2d at 756. That is to say, if something goes wrong in manufacturing or processing, it is the maker's fault, regardless of whether the maker knows that it has injected a vice into its product.

Hence, in *Weber* fault was attributed to the manufacturer because its cattle dip was manufactured with a proportion of arsenic that exceeded the manufacturer's specifications. In *DeBattista* a blood bank distributed blood that it had bought from a donor who carried a hepatitus virus. Although it was impossible for the blood bank to discover with 100% accuracy whether the blood it received from donors was tainted, the possibility of receiving tainted blood was distinctly foreseeable, and the fault was properly attributable to the blood bank, which had consciously assumed such risks. In such cases, a presumption of the manufacturer's knowledge is a normal proof aspect of the burden-shifting process, predicated on assignment of fault. *Cf. DeBattista*, 403 So.2d at 31 (the "unreasonably dangerous" product requirement is not to be used to "burden the injured plaintiff with proof of an element which rings of negligence").

It is quite a different thing to assign fault to Johns-Manville, not because its products were improperly prepared, but because of failure to warn of potential inherent dangers of asbestos, without regard to whether those dangers were foreseeable when its products were made and distributed.

This court has previously recognized that the Louisiana law of products liability must be construed with careful attention to the nature of the product "defect" at issue. In *Scott v. White Trucks*, 699 F.2d 714, 717 n. 4 (5th Cir.1983) (emphasis added), we observed:

> With respect to what constitutes a "defect," the cases of *Chappuis v. Sears Roebuck & Co.*, 358 So.2d 926 (La.1978), *Marquez v. City Stores Co.*, 371 So.2d 810 (La.1979), and *Hunt v. City Stores Co.*, 387 So.2d 585 (La.1980), represent, perhaps, something of a further development in Louisiana products liability law. *Hunt* and *Marquez* each involved the feet of small children in tennis shoes caught in department store escalators built to industry standards. *Marquez* held the store, but not the party manu-

facturing, installing, and maintaining the escalator, liable; *Hunt* held both liable. As we read *Hunt* and *Chappuis*, the manufacturer or seller may be liable if the product, as manufactured or sold, is unreasonably dangerous in normal use, even though neither the design nor the manufacturing process could reasonably be improved. *The manufacturer's or seller's liability in such a case, however, is based entirely on failure to warn.*

*Chappuis* makes clear that where liability is predicated not on a product's being badly designed, made, or inspected, but on failure to warn of potential inherent dangers in an otherwise well-made product, foreseeability of the danger is indeed a prerequisite to assigning fault to the maker. In *Chappuis*, the Louisiana Supreme Court considered the liability that would attach to the manufacturer of a hammer that was properly designed and manufactured but had the inherent potential danger of splintering if the hammer were used after once being chipped. In *Chappuis*, it was undisputed that the manufacturer and other experts were aware of this inherent danger in the hammer. Thus, the manufacturer was held at fault for failure to inform the user of the known danger. The court made clear that this liability was predicated on the finding of "fault" under C.C. art. 2315, offering this discussion of the concept of "fault":

> What are the guides to the court in Louisiana in making a determination of fault, i.e., offenses against the generally accepted standards of conduct? First is the Civil Code itself, which lays down, not only in the section devoted to 'Offenses and Quasi-Offenses,' but also elsewhere, rules and standards of conduct, which are binding on the individual citizen as civil obligations. Examples of these obligations are numerous .... Reference may also be made to ... the duties of vendors of goods to warn of *known* defects ....

358 So.2d at 929 n. 2, *quoting* Stone, Tort Doctrine in Louisiana: The Concept of

Fault, 27 Tul.L.Rev. 1, 2–3 (1952) (emphasis added).

The *Chappuis* court concluded with the observation that this assignment of fault in strict liability was not to be confused with imposition of *absolute* liability irrespective of fault predicated on the manufacturer's presumed knowledge of potential danger:

> *Absolute* liability upon a manufacturer whose product is useful, traditional, but which might become dangerous in some circumstances must be distinguished from the obligation here involved. There may be many tools or other products which become dangerous for normal use in certain conditions. *But when the danger is known to the manufacturer* and cannot justifiably be expected to be within the knowledge of users generally, the manufacturer must take reasonable steps to warn the user.

358 So.2d at 930 (emphasis added).

The Louisiana appellate courts have reiterated this principle:

> It is an established principle in the law of products liability that a manufacturer has a duty to give adequate warning of unreasonable danger involved in the normal use of its product, *where the manufacturer knows or should know of such danger.*

*Cobb v. Insured Lloyds*, 387 So.2d 13, 19 (La.App. 3d Cir.1980), *writ denied*, 394 So.2d 615 (La.1980) (emphasis added). *See Lytell v. Goodyear Tire & Rubber Co.*, 439 So.2d 542, 545 (La.App. 1st Cir.1983). *See also Schneider v. Eli Lilly & Co.*, 556 F.Supp. 809 (E.D.La.1983). *Cf. Andries v. General Motors Corp.*, 444 So.2d 1180, 1183 (La.1983) (affirming trial court's jury instructions that "manufacturer of a product must give an adequate warning of any danger inherent in any product made by him or in its use which he knows or should know ...").

Halphen does not assert that the asbestos distributed by Johns-Manville was prepared or incorporated improperly. The gist of the complaint is that the products contained asbestos, that this made them defective and unreasonably dangerous, and that

Halphen was not warned of the risk of injury. Even under the majority opinion rule, however, this is not enough to establish an actionable design or manufacturing defect without establishing foreseeability of injury. The majority opinion recognizes two distinct components of liability for product defect: "The injury must be foreseeable; the defect need not be." Necessarily, then, if a product defect is to be predicated solely on inherent risk of injury, that risk must be foreseeable. Otherwise, the first recognized component of liability is rendered superfluous.

The asbestos-containing product involved here was not defective in the sense that blood containing a hepatitus virus or a radio manufactured with bad wiring is defective. Most blood is not pathogenic. Once in a blue moon, a virus will contaminate blood, making the blood defective. Similarly one radio in a million might shock when it is turned on. Such defects, though not preventable, are nevertheless foreseeable in conducting the business of handling blood for resale or manufacturing radios.

This case presents altogether different considerations of product "defect." The world now knows that all asbestos will cause harm if breathed. That does not make asbestos defective. Many high-risk products are commonly used, such as electrical devices, poisonous or toxic chemicals, heavy machinery, and tobacco. They carry a potential for serious injury in the course of normal use. Like the hammer that becomes dangerous once it is chipped, these products may be "defective" if the potential danger is foreseeable yet the supplier provides no adequate warning or instructions as to safe use. *See* Sales, The Duty to Warn and Instruct for Safe Use in Strict Tort Liability, 13 St.Mary's L.J. 521, 531–533 (1982), and cases cited therein. However, the *Restatement (Second) of Torts* (1965) accords special treatment to unavoidably unsafe products. It notes that although some products are incapable of being made safe for their ordinary and intended use, their marketing and use are nevertheless fully justified. "Such a prod-

uct, properly prepared, and accompanied by proper directions is not defective, nor is it *unreasonably* dangerous." § 402A, comment k (emphasis in original).

As *Chappuis* and its progeny make clear, the manufacturer has the duty to give warnings only about potential dangers of which it knows or should know. Otherwise there is no legal basis for assigning fault to the manufacturer which did not introduce the infirmity into the product and which could not foresee the risk of inherent dangers. In these circumstances, an irrebuttable presumption of foreseeability of risk violates basic due process.

This is what Judge Wisdom meant when he stated in *Lartigue v. R.J. Reynolds Tobacco Co.*, 317 F.2d 19, 36 (5th Cir.1963):

> The injuries from knowable risks are a cost of production for the industry to bear; they are passed on to consumers. The consumer of such products is entitled to a maximum of protection at the hands of some one, and the proper persons to afford it are those who receive the benefits from manufacturing and marketing the products.
>
> But it is reasonable to draw a line somewhere: a manufacturer of food products is not like one who keeps a tiger for a pet in a crowded city. Louisiana draws the line at unknowable risks. For strict liability to apply there must be foreseeability of harm.

The majority opinion states that *"Lartigue* no longer has precedential value." I do not agree. The majority's surprising announcement apparently results from its failure to recognize the substantial differences in approach the Louisiana Court has taken to the several different types of actionable product "defects." As in the instant case, as in *Chappuis*, and as in its progeny, the tobacco product at issue in *Lartigue* was not alleged to be "defective" because of flaws in manufacture or design, but because tobacco has been discovered to be inherently dangerous.

The Louisiana cases after *Lartigue* have not altered the rule that a manufacturer cannot be held liable for a failure to warn about reasonably unknowable potential dangers inherent in a properly made product. Indeed, the principles of the early Louisiana cases upon which *Lartigue* relied have been reaffirmed by *Weber* and the cases which have followed *Weber*. The *Lartigue* view is followed by the majority of common law states. *See* Special Project, An Analysis of the Legal, Social, and Political Issues Raised by Asbestos Litigation, 36 Vand.L.Rev. 573, 590–607 (1983), and cases cited therein.

Finally, the majority opinion is inconsistent with the *Restatement* approach to strict liability for "defective" products. The Louisiana Supreme Court has noted the "pervasive influence" of § 402A of the *Restatement.* In fact, *Weber* is constructed in parallel terms to the *Restatement,* and we have interpreted *Weber* as adopting strict liability in *Restatement* terms. *See Khoder v. AMF, Inc.*, 539 F.2d 1078, 1079 (5th Cir.1976); *Welch v. Outboard Marine Corp.*, 481 F.2d 252, 255 (5th Cir.1973).

The majority opinion's conclusion that an inherently dangerous characteristic of a product that is properly prepared constitutes an actionable "defect" flies in the face of the *Restatement*'s teaching that even unsafe products can be marketed with proper warnings. The troublesome inference implicit in the majority's view is that a plaintiff has a strict liability cause of action for harm occasioned by an unavoidably unsafe product independent of a cause of action for failure to warn.

To impose absolute liability without regard to whether any risk incident to the distribution of the product was foreseeable, and hence without regard to the distributor's fault, is contrary to public interest as well as applicable law. Today we cannot know what useful, regularly used products will be condemned by future technology. For example, properly manufactured microwave ovens have been discovered to affect persons with pacemaker implants. From time to time toxicologists discover that effective pesticides and preservatives in widespread use have previously unknown harmful side effects. But, many more new and

useful products continue their helpful service without difficulty. A manufacturer faced with absolute liability imposed by an unreasonable, irrebuttable presumption will likely be intimidated from developing and marketing such products under the majority's rule. Even without regard to this public policy argument, however, it is enough for now to say that in making manufacturers insurers of their products irrespective of fault, the majority opinion contravenes the *Restatement* and Louisiana law. *See DeBattista*, 403 So.2d at 30.

I respectfully dissent.