Victor L. MARTIN, (Clara Lea Martin, Sandra Martin Fisher and Robert W. Martin, as the Personal Representative of appellant Victor L. Martin, for substitution in the place and stead of appellant, Victor L. Martin, Deceased), Plaintiff-Appellee Cross-Appellant,

v.

AMERICAN PETROFINA, INC., et al., Defendants,

and

Benjamin Foster, Division of Anchem Products, Defendant-Appellant, Cross-Appellee.

No. 84–3563.

United States Court of Appeals, Fifth Circuit.

Dec. 30, 1985.

ers of asbestos-containing insulation products, alleging that his exposure to asbestos at work caused him to contract mesothelioma, a cancer of the lung lining. The district court rendered summary judgment in favor of five defendants, and fourteen of the remaining fifteen compromised with Martin before the matter was submitted to the jury. The sole remaining defendant, the Benjamin Foster Division of Achem Products (Benjamin Foster), was found liable to Martin by the jury for 2% of his damages, which the jury set at $500,000.

Benjamin Foster now appeals from the district court's denial of judgment notwithstanding the verdict, while Martin appeals[1] the district court's instructions to the jury regarding the apportionment of fault. For the reasons assigned below, we affirm the district court's denial of j.n.o.v. and modify the award rendered in favor of Victor Martin.

## I. EXPOSURE

At the outset, Benjamin Foster challenges the sufficiency of the evidence adduced at trial for the jury's finding that Victor Martin was exposed to Benjamin Foster asbestos products. We, then, are obliged to apply in this diversity suit the federal standard for the sufficiency of the evidence. *Gideon v. Johns-Manville Sales Corp.*, 761 F.2d 1129, 1143 (5th Cir.1985).

In reviewing a district court's ruling on motion for j.n.o.v., all of the evidence must be considered in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, granting of the motion was proper. If, however, the evidence is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the jury's verdict should remain intact. A

Woodley, Barnett, Cox, Williams, Fenet & Palmer, Edmund E. Woodley, James B. Doyle, Lake Charles, La., for defendant-appellant, cross-appellee.

George R. Covert, Baton Rouge, La., for plaintiff-appellee, cross-appellant.

Before CLARK, Chief Judge, BROWN and GEE, Circuit Judges.

GEE, Circuit Judge:

Victor Martin worked as a pipefitter at various industrial plants in Baton Rouge, Louisiana, from the mid-1950s until the early 1980s. He brought this action in the district court against various manufactur-

1. Victor Martin died during the pendency of the appeal. His survivors were substituted as party plaintiffs in accordance with Fed.R.App.P. 43 by an order of this court on January 30, 1985.

mere scintilla of evidence is insufficient basis for a verdict, but it is the function of the jury as the finder of fact, and not that of the district court or the reviewing court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses. *Boeing Company v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc).

■ Martin worked as a pipefitter at an Exxon plant in Baton Rouge for nine months in 1951. After a four year interruption for military service, he returned to the plant in 1956 and worked there until 1961. Although he worked at other industrial plants after this time, and actually returned to the Exxon plant in the early 1980s, Martin only attempted to prove that he was exposed to Benjamin Foster asbestos products at the Exxon plant in 1951 and 1956–1961.

Martin could not recall whether he had worked with products bearing the Benjamin Foster name. As a pipefitter, part of his work entailed the removal, through tearing, burning, or grinding of "mastics" —a weather protective coating, similar to roofing tar, containing asbestos—that had been applied to insulation on steel and pipes, most of which were out-of-doors. R.L. Anderson, an insulation supply company officer in Baton Rouge during the 1950s, testified that beginning in the "mid-fifties", Benjamin Foster mastics containing asbestos were used "throughout" the Exxon plant, along with the mastics of other manufacturers.

Ivy Thompson, an insulator employed by various contractors in Baton Rouge during the 1950s and 1960s, testified that he applied mastics at the Exxon plant during the time in question, and that he used Benjamin Foster mastics more than any other. Another insulator at the Exxon plant during the time in question, D.A. Ball, testified that Benjamin Foster mastics were used throughout the Exxon plant.

In light of the foregoing testimony, and since Martin testified that a substantial portion of his duties as a pipefitter at the

Exxon plant from 1956 to 1961 comprised "tear-out" operations of mastics by removing it through cutting and tearing, we cannot say that the jury's finding that Martin was exposed to Benjamin Foster mastics products is one that reasonable men could not have arrived at. There was sufficient evidence for a finder of fact to conclude that, more probably than not, Martin was exposed to Benjamin Foster mastics.

## II. WERE THE BENJAMIN FOSTER MASTICS DEFECTIVE?

■ Louisiana products liability law, which governs this diversity case, holds that the maker of a product may be held liable to one injured due to a defect in that product that renders the product "unreasonably dangerous *to normal use.*" *Lebouef v. Goodyear Tire and Rubber Co.*, 623 F.2d 985, 988 (5th Cir.1980), citing *Chappuis v. Sears, Roebuck and Co.*, 358 So.2d 926, 929 (La.1978) (emphasis in the original). Benjamin Foster argues that even if Martin had been exposed to its products, there was no evidence that its mastics were defective, or that its mastics were unreasonably dangerous in normal use.

Anderson, the insulation contractor, testified that as a general rule, a mastics insulation job could be expected to last five to ten years before it began to break down by becoming brittle and cracking. D.A. Ball testified that the mastics might begin breaking down as soon as a year after it had been applied, depending upon the temperature of the area. When this decaying mastic was removed—through use of the hands, or with tools such as a hoe or hatchet, it could create dust.

The plaintiff's expert witness, a Dr. West, testified that, in his opinion, when mastics such as the Benjamin Foster type began to break down—either through increasing age or when forcibly removed through tearing, burning, or grinding— that their asbestos fibers could be released into the atmosphere. On the other hand, Foster's expert witness, Wayne Ellis, a re-

tired industrial chemist, testified that he could envision no circumstances in which Foster mastics would release asbestos fibers into the atmosphere, even after prolonged exposure to the weather or having been burned and torn.

The testimony of Martin's witnesses supported the claim that the Benjamin Foster mastics were defective, since in the course of normal use—either due to their gradual breakdown as a result of exposure to the elements, or as a result of removal by Exxon personnel—asbestos fibers were released into the air. Benjamin Foster's expert witness denied that such a release was possible. Given the jury's role in evaluating the evidence and the credibility of the witnesses, we cannot say that the jury's acceptance of the plaintiff's witnesses' testimony was something that reasonable men could not have done.

Based on the evidence before it, the jury found that Martin had been exposed to Benjamin Foster mastics and that those mastics had defectively released asbestos fibers into the air. Martin's medical testimony indicated that even minimal exposure to asbestos was associated with mesothelioma and that the risk increased as the exposure did. Given that the evidence indicated that Martin was exposed to Benjamin Foster asbestos for possibly several years, the jury's conclusion regarding Benjamin Foster's liability was supported by the evidence. The district judge did not err in denying the motion j.n.o.v.

### III. THE SEQUENCE OF THE PRESENTATION OF EVIDENCE

■ Benjamin Foster next contends that the district court erred in permitting the plaintiff to present evidence of his medical condition before evidence of the defective nature of Benjamin Foster mastics was presented. This contention is meritless. Fed.R.Evid. 611 provides the trial judge with reasonable discretion in determining "the mode and order of interrogating witnesses." See also *United States v. Rhoden*, 453 F.2d 598, 600 (5th Cir.1972) ("It is

within the sound discretion of the trial court to determine the order in which evidence shall be received.").

### IV. JURY INTERROGATORY NO. 1

■ Jury Interrogatory No. 1 stated:

Did the product made and distributed by the defendant, Benjamin Foster, a division of Anchem, have a defect which existed at the time the product was made because of the defendant's failure to properly warn concerning non-obvious dangers which occur with normal use of the product?

Benjamin Foster argues that interrogatory's effect was to instruct the jury that if there was a failure to warn then there was a defect, regardless of whether any proof was offered of the defect.

Although Interrogatory No. 1 contained unfortunate syntax, we cannot agree with the construction given it by Benjamin Foster. The interrogatory asked if the jury found that the Benjamin Foster mastics had a defect—a defect caused by the failure to warn of *non-obvious dangers which might occur with normal use of the product.* A defective product was thus implicitly defined as one which contained non-obvious dangers which might occur with normal use of the product, *and* where the manufacturer failed to give warning. The jury, then, was not instructed to find liability on the part of Benjamin Foster for the mere failure to give warning. The jury, in considering this interrogatory, had to determine whether there was anything about which a warning should have been given.

### V. BENJAMIN FOSTER'S LIABILITY: VIRILE SHARE V. PROPORTIONATE FAULT

■ Victor Martin, in a cross-appeal, argues that the district court erred in instructing the jury to determine the comparative fault of the fourteen settling defendants and the fault of Benjamin Foster. The jury apportioned the fault of the settling defendants at 98% and that of Benjamin Foster at 2%. The jury then found

Martin's total damages to be $500,000. The district court awarded the plaintiff 2% of his total damages, or $10,000. Martin contends that Benjamin Foster is liable for one-fifteenth of his damages, or approximately 6.7% of $500,000.

Louisiana Civil Code Article 2324 provides, in pertinent part, that "Persons whose concurring fault has caused injury, death or loss to another are also answerable, *in solido*" (emphasis in the original). La.Civil Code Art. 1794 (1985) provides that "An obligation is solidary for the obligors when each obligor is liable for the whole performance." The jury in today's case found that the concurring fault of Foster and the 14 settling defendants brought about the plaintiff's injury. Hence, as joint tortfeasors and thus necessarily solidary obligors, any of the 15 could have been made responsible for the entirety of the award. The question then becomes: What was the effect of Martin's compromise with the other fourteen joint tortfeasors on Benjamin Foster's liability?

*Harvey v. Travelers Insurance Company*, 163 So.2d 915, 920–922 (La.App. 3d Cir.1964), a landmark case in the Louisiana jurisprudence, established the principle that an obligee's release of a joint tortfeasor reduces the amount recoverable against the remaining joint tortfeasors by the amount of the virile (pro-rata) share of the one released, since the plaintiff, in releasing a joint tortfeasor, has prejudiced the remaining tortfeasors by depriving them of their right of contribution from the one so released. *Dunn v. Sears Roebuck and Co.*, 645 F.2d 511, 513 (5th Cir.1981); *Wall v. American Employers Ins. Co.*, 386 So.2d 79, 82 (La.1980); *Canter v. Koehring Co.*, 283 So.2d 716, 727–28 (La.1973). See also La.Civil Code Art. 1803(1) (1985), which codified the *Harvey* rule.

Benjamin Foster, the sole remaining tortfeasor in the action after the plaintiff's release of the fourteen others, is thus entitled to a reduction in the amount recoverable against it. But is the amount recoverable—$500,000—to be reduced by fourteen-fifteenths, the pro rata shares of the set-

tling joint tortfeasors, or by 98%, their proportionate fault? La.Civil Code Art. 1804 (1985) provides:

Among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary. *If the obligation arises from an offense or quasi-offense a virile portion is proportionate to the fault of each obligor.* (emphasis added).

Clearly, then, under existing law, Benjamin Foster would be entitled to a reduction in damages recoverable against it proportionate to the fault of the settling joint tortfeasors, or 98%.

Art. 1804, however, incorporated the substance of Art. 2103 from the pre-1985 Code. Pre-1985 Art. 2103 was amended by Act. No. 431 of the 1979 session of the Louisiana Legislature to make it comport with the introduction of comparative negligence in Louisiana on August 1, 1980. Before that date, Art. 2103 provided:

When two or more debtors are liable in solido, whether the obligation arises from contract, a quasi-contract, an offense, or a quasi-offense, it should be divided between them. *As between the solidary obligors, each is liable only for his virile portion of the obligation.* West La.Stat.Ann., Civil Code Vol. 16. (emphasis added).

Prior to the introduction of comparative negligence on August 1, 1980, then, under the *Harvey* rule, a remaining joint tortfeasor was entitled to a reduction in damages recoverable against him proportionate to the settling tortfeasor's *pro rata* share. *David v. Houston Fire and Casualty Co.*, 242 So.2d 5 (La.App. 3d Cir.1970).

Section 4 of Act No. 431 of 1979, which introduced comparative negligence in Louisiana, provided that: "The provisions of this act shall not apply to claims *arising from events that occurred prior to the time this act becomes effective.*" Since the plaintiff's claims here arise from events—his exposure to asbestos products at the workplace in the 1956–61 period—

that occurred prior to the effective date of this Act (August 1, 1980), the amended Art. 2103 and its 1984-revision successor, Art. 1804, are simply inapplicable. Therefore, pre-1980 Art. 2103 governs, and the plaintiff's award of $500,000 in damages against Benjamin Foster should be reduced by the pro rata shares of the settling joint tortfeasors, or fourteen-fifteenths.

## VI. SATISFACTION?

■ Benjamin Foster finally argues that since the damage award rendered in favor of Martin was for $500,000, and that Martin had already compromised with the other joint tortfeasors for $565,000, that Martin's claim against it has already been satisfied. We have little difficulty rejecting this argument. The amount at which the plaintiff and settling joint tortfeasors compromise is irrelevant to the *Harvey* rule and Art. 1803(1) of the 1985 Code. *Cunningham v. Hardware Mutual Casualty Co.*, 228 So.2d 700, 707 (La.App. 1st Cir.1969). Regardless of the amount a settling joint tortfeasor actually pays to compromise the plaintiff's claim, the damage award against the remaining joint tortfeasors is reduced by the share of the settling joint tortfeasor (whether the share is pro rata or proportionate to fault is, of course, dependent on the considerations discussed above).

## VII. CONCLUSION

To recapitulate, since the evidence adduced at trial was sufficient for the jury to have concluded that Victor Martin was exposed to defective Benjamin Foster asbestos products, the district court did not err in denying Benjamin Foster's motion for j.n.o.v. Nor did the district court abuse its discretion in establishing the sequence in which evidence was presented, and nor did jury interrogatory No. 1 prejudice Benjamin Foster. The district court did err, however, in reducing Martin's award for damages against Benjamin Foster by the proportionate fault of the settling joint tortfeasors, rather than by their pro rata virile shares, or fourteen-fifteenths. We therefore reverse the judgment in this re-spect only and remand for entry of a modified judgment.

*AFFIRMED* in Part; *REVERSED AND REMANDED* in Part.